UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY | : | CIVIL ACTION NO.  15-0074 |
| VS. | : | JUDGE ROBERT G. JAMES |
| TAYLOR TRUCK LINE, INC., ET AL. | : | MAG. JUDGE KAREN L. HAYES (consolidated with) |
| R & L BUILDERS SUPPLY, INC., ET AL. | | CIVIL ACTION NO. 15-2460 |
| VS. | | |
| UNION PACIFIC RAILROAD COMPANY, ET AL. | | |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two sets of hybrid motions to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(2) & (6).  Defendants, Robert G. Taylor Trust and Robert G. Taylor, in his capacity as trustee of the Robert G. Taylor Trust, filed the first set of motions [doc. #s 134 & 149] seeking dismissal of the amended complaints that joined them in each of the consolidated cases.  Defendant, Robert G. Taylor, in his individual capacity, filed the second set of motions [doc. #s 143 & 145] seeking dismissal of the amended complaints that joined him in each of the consolidated cases.  For reasons that follow, it is recommended that the motions be GRANTED IN PART and DENIED IN PART.

## Procedural History

On October 5, 2014, a train, owned and/or operated by Union Pacific Railroad Company ("UPRC") struck a 2013 Kenworth tractor trailer that had become lodged on the tracks at the U.S. Highway 425/La. Highway 2 crossing in Mer Rouge, Louisiana.  The collision caused the

UPRC train to derail, cargo to spill, and a tank car to leak Argon onto surrounding property.

Accordingly, on January 14, 2015, UPRC filed the instant diversity action (the "UPRC Suit")

against the truck driver, Daniel Shackleford, and his employer(s), shipment broker, and owner(s)

of the truck:  Taylor Truck Line, Inc.; Taylor Logistics, Inc.; and College City Leasing, LLC,

respectively (collectively, the "Taylor entities").  UPRC seeks recovery for all damages

sustained as a result of the collision, including defense costs and indemnity for all third-party

claims made against UPRC related to the accident.  *See* below.

On October 1, 2015, R & L Builders Supply, Inc. and R & L Properties of Oak Grove,

LLC (collectively, "R&L") filed the instant diversity suit (the "R&L Suit") against UPRC, the

Taylor entities, Daniel Shackleford, and B & P Enterprises, Inc. ("B&P").  R&L is the owner of

property adjacent to the train track where some of the derailed train cars came to rest following

the collision, and from which UPRC's contracted agent, B&P, staged its reclamation services.

R&L seeks recovery for all causally-related damages to its property and interests.

On November 4, 2015, the court consolidated the R&L Suit with the UPRC Suit.  On

December 21, 2015, UPRC filed a Second Supplemental and Amended Complaint joining Taylor

Consolidated, Inc., the parent company of the Taylor entities.  (2nd Suppl. & Amend. Compl.

[doc. # 65]).  The Second Supplemental and Amended Complaint alleged that the Taylor entities

were involved in an elaborate scheme to shield assets that otherwise would be available to satisfy

a judgment against Taylor Truck Line, Inc.  *Id*.  Consequently, the amended complaint further

alleged that,

> [t]he effect and outcome of the scheme was the creation of a single business
> enterprise comprised and consisting of (a) Taylor Consolidated, Inc., a shell
> company, with the Robert Taylor Trust as its sole owner, as the owner and parent
> company of the three other corporations; (b) College City Leasing, LLC as the

2

owner of the tractors and trailers leased to Taylor Truck Line, Inc.; (c) Taylor
Truck Line, Inc. as the operating company and income and revenue generator;
and (d) Taylor Logistics, Inc. as the logistics department of Taylor Truck Line,
Inc.

*Id*.

A few months later, on March 23, 2016, UPRC filed its Third Supplemental and
Amended Complaint joining defendant, Robert G. Taylor Trust.  (3rd Suppl. & Amend. Compl.
[doc. # 83]).  The Third Supplemental and Amended Complaint alleged that the Robert G.
Taylor Trust and the other Taylor entities were alter egos of Taylor Truck Line, Inc.  *Id*., ¶ 12.
In addition, as the sole owner of Taylor Consolidated, Inc., the Robert G. Taylor Trust
effectively controlled all of the Taylor entities.  *Id*., ¶ 13.

On May 24, 2016, UPRC filed its Fourth Supplemental and Amended Complaint joining
Robert G. Taylor, individually, and in his capacity as trustee of the Robert G. Taylor Trust.  (4th
Suppl. & Amend. Compl. [doc. # 99]).  In a nutshell, the Fourth Supplemental and Amended
Complaint alleged that,

Taylor Consolidated, Inc., Taylor Truck Line, Inc., College City Leasing, LLC,
Taylor Logistics, Inc., the Robert G. Taylor Trust, and Robert G. Taylor in [sic]
individually and in his capacity as Trustee of the Robert G. Taylor Trust should
be held liable as one and the same (and their assets aggregated) for all debts owed
to Union Pacific by Taylor Truck Line, Inc., as they together legally comprise the
complete true defendant under the Single Business Entity Doctrine, under the
Alter Ego/Instrumentality Doctrine, and/or under any and all other laws
governing veil piercing and aggregation of affiliated entities/persons/juridical
persons for the purposes of satisfying a judgment secured by Union Pacific for the
damages Union Pacific has sustained as a consequence of this action.

*Id.*, ¶ 63.

On May 27, 2016, R&L filed a Second Amended and Supplemental Complaint joining
Robert G. Taylor, individually, and in his capacity as trustee of the Robert G. Taylor Trust.  (2nd
Amend. & Suppl. Compl. [doc. # 110]).  The Second Amended and Supplemental Complaint

3

similarly alleged that,

> Taylor Consolidated, Inc., Taylor Truck Line, Inc., College City Leasing, LLC, Taylor Logistics, Inc., the Robert G. Taylor Trust, and Robert G. Taylor in individually and in his capacity as Trustee of the Robert G. Taylor Trust should be held liable as one and the same (and their assets aggregated) for all debts owed to [R & L] as they together legally comprise the complete true defendant under the Single Business Entity Doctrine, under the Alter Ego/Instrumentality Doctrine, and/or under any and all other laws governing veil piercing and aggregation of affiliated entities/persons/juridical persons for the purposes of satisfying a judgment secured by [R & L] for the damages [R & L] has sustained as a consequence of this action.

*Id*., ¶ LI.

On July 26 and August 5, 2016, the Robert G. Taylor Trust and Robert G. Taylor, as Trustee of the Taylor Trust filed the instant motions to dismiss UPRC's Third and Fourth Supplemental and Amended Complaints, plus R&L's Second Amended and Supplemental Complaint for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted.  On August 3 and 4, 2016, Robert G. Taylor, appearing in his individual or personal capacity, filed the instant motions to dismiss UPRC's Fourth Supplemental and Amended Complaint and R&L's Second Amended and Supplemental Complaint for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted.[1]  Following delays for briefing, the matter is ripe.

## Analysis

### I.    Capacity to be Sued

Movants contend that UPRC and R&L's amended complaints do not state a claim for relief against the Robert G. Taylor Trust because it is not a juridical entity with the capacity to be

---

[1]  Although the motions also sought dismissal under Rule 12(b)(6), argument was limited to the issue of personal jurisdiction.

sued.[2]  Under Federal Rule of Civil Procedure 17(b), save for other persons/entities not present

here, "capacity to sue or be sued shall be determined by the law of the state in which the district

court is held," i.e., Louisiana.  To enjoy the capacity to be sued under Louisiana law, an entity

must qualify as a "juridical person."  *Dejoie v. Medley*, 945 So.2d 968, 972 (La. App. 2d

Cir.2006) (citations omitted).  This term is defined by the Louisiana Civil Code as ". . . an entity

to which the law attributes personality, such as a corporation or partnership."  La. Civ. Code Art.

24.

The Louisiana Supreme Court has recognized that "a trust is not a juridical person in the

strict sense of the word . . ."  *In re Howard Marshall Charitable Remainder Annuity Trust*, 709

So.2d 662, 667 (La. 1998) (internal quotation marks omitted).  Indeed, a trust is a "relationship."

La. R. S. § 9:1731.  Moreover, in lieu of the trust itself, Louisiana law provides that "[t]he trustee

of an express trust is the proper defendant in an action to enforce an obligation against a trust

estate."  La. Code Civ. Pro. Art. 742.

Here, UPRC and R&L make no serious attempt to establish that the trust itself is a proper

defendant, either under the law of the forum state or the law of the state where it was formed,

Minnesota.  Accordingly, the court necessarily concludes that the Robert G. Taylor Trust is not a

proper party defendant; dismissal is the remedy.  *See Darby v. Pasadena Police Dept.*, 939 F.2d

311 (5th Cir. 1991) (affirming district court's dismissal of a defendant because it could not be

---

[2]  The Fifth Circuit implicitly has approved 12(b) motions arguing the lack of capacity to be sued.  *Angers ex rel. Angers v. Lafayette Consol. Gov't*, Civ. A. No. 07-0949, 2007 WL 2908805 (W.D. La. Oct. 3, 2007) (citing *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir.1991)).  In addition, the Second Circuit has held that the defense of lack of capacity is properly raised via a 12(b)(6) motion, and, if supported by matters outside the pleadings, treated as a motion for summary judgment under Rule 56.  *See Klebanow v. New York Produce Exch.*, 344 F.2d 294,296 n.1 (2d Cir. 1965) (citations omitted).

sued as an independent entity).[3]

## II.   Personal Jurisdiction

A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant as long as (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state does not transgress due process protections under the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Louisiana's long-arm statute extends jurisdiction to the full limits of the United States Constitution. *See* La. R.S. § 13:3201(B). Accordingly, the sole issue here is whether exercising *in personam* jurisdiction over the non-resident defendant comports with federal due process. *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir.2010) (citation omitted).

"When a nonresident defendant timely questions a federal district court's *in personam* jurisdiction over it, the plaintiff asserting jurisdiction has the burden of proving that the court has jurisdiction over the defendant." *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831–32 (5th Cir.1986), on reh'g in part, 836 F.2d 850 (5th Cir.1988) (citations omitted). If the court resolves a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, then plaintiff need make only a prima facie showing of the jurisdictional facts. *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). In assessing whether plaintiff has made a prima facie showing, the court "must accept as true [the plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the

---

[3]   In any event, the Robert G. Taylor Trust also is entitled to dismissal for lack of personal jurisdiction. *See* discussion, *infra*.

[jurisdictional] facts contained in the parties' affidavits and other documentation." *Id.* (citation

and internal quotation marks omitted).[4]  However, the court need not credit plaintiff's conclusory

allegations, even if uncontroverted.  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253

F.3d 865, 869 (5th Cir.2001) (citations omitted).

> Typically,

> [a] federal district court in Louisiana sitting in diversity may exercise personal
> jurisdiction over a non-resident defendant if (1) the defendant has purposefully
> availed himself of the protections and benefits of Louisiana by establishing
> "minimum contacts" in the state, and (2) the exercise of the jurisdiction complies
> with traditional notions of "fair play and substantial justice.

*Jackson,* 615 F.3d at 584 (citation omitted).

Here, however, it is uncontroverted that Robert Taylor has enjoyed almost no direct contacts

with Louisiana.  *See* Affidavit of Robert G. Taylor [doc. # 143-2].[5]

> Realizing same, UPRC and R&L seek to attribute the contacts of the Taylor entities,

including Taylor Consolidated, to Robert G. Taylor via an alter ego or single business enterprise

theory.[6]  "While the general rule is that jurisdiction over an individual cannot be predicated upon

jurisdiction over a corporation, courts have recognized an exception to this rule when the

corporation is the alter ego of the individual."  *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th

Cir.1985).  Thus,

> it is compatible with due process for a court to exercise personal jurisdiction over

---

[4]  Of course, even if plaintiffs *were* to avoid a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, they still would be required to prove the jurisdictional facts at trial by a preponderance of the evidence.  *Travelers Indem. Co., supra.*

[5]  Albeit, he traveled to Louisiana to visit the accident site.  (Taylor Deposition, pg. 60 [doc. # 165-1]).

[6]  R&L, however, expends measurable resources discussing the nuances between specific and general jurisdiction.  *See* R&L's Opp. Memo., pgs. 11-17 [doc. # 164].

> an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court.
>
> The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity,* the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of . . . due process analysis.

*Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir.2002) (citation omitted).

Furthermore, courts uniformly have recognized that a corporation's waiver of personal jurisdiction may be imputed to its individual alter ego.  *Id.*  (citations omitted).  Thus, "an individual alter ego of a corporation that has waived personal jurisdiction cannot subsequently attempt to negate that waiver."  *Id.*

In this case, the Taylor entities filed several answers that did not question, or otherwise reserve their right to challenge personal jurisdiction.  *See* doc. #s 8, 30, 71, 81, 85, 108, 115, 119, and 121.  Accordingly, they waived their right to contest personal jurisdiction.[7]  The waiver is attributable to Robert G. Taylor, both in his personal capacity and as trustee of the Robert T. Taylor Trust, *so long as* Robert G. Taylor and the Robert G. Taylor trust are alter egos of at least one of the Taylor entities (including Taylor Consolidated, Inc.).  *See Patin, supra*.[8]

The parties do not address which state's alter ego law should apply in the present

---

[7]  Rule 12(h)(1) of the Federal Rules of Civil Procedure provides that a defendant waives its right to challenge personal jurisdiction when it fails to raise the issue in its first responsive pleading, i.e. in a Rule 12(b) motion or an answer.  *Hunter v. Serv-Tech, Inc.*, Civ. Action No. 07-9009, 2009 WL 2858089 (E.D. La. Aug. 28, 2009) (citing *Kersh v. Derozier,* 851 F.2d 1509, 1511–12 (5th Cir.1988); *Golden v. Cox Furniture Mfg .,* 683 F.2d 115, 118 (5th Cir.1982); *T & R Enters., Inc. v. Continental Grain Co.,* 613 F.2d 1272, 1277 (5th Cir.1980)).

[8]  "[A] court which has jurisdiction over a corporation has jurisdiction over its alter egos." *Jackson*, 615 F.3d at 586 (citation omitted).

context.[9]  Of course, in diversity cases, the law of the forum state governs choice of law questions.  *Energy Coal v. CITGO Petroleum Corp.*, ___ F.3d ___, 2016 WL 4575569, at *2 (5th Cir. Sept. 1, 2016) (citation omitted).  Moreover, Louisiana choice of law provisions often compel a finding that the law of the state of incorporation is to be applied when determining whether to pierce the corporate veil.  *See Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 392 (5th Cir.2009) ("Under Louisiana law, the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties"); *Patin, supra*; *Energy Coal, supra*.

In this case, the Taylor entities were incorporated or formed in Minnesota.[10]  To pierce the corporate veil under Minnesota law, the court must "1) analyze whether the corporation functioned as the mere instrumentality of the principals a party is attempting to reach by piercing the corporate veil, and 2) determine whether injustice or fundamental unfairness would occur if the corporate veil were left intact."  *Asake v. Moynihan*, Civ. Action No. 15-2110, 2015 WL 6865693, at *2–3 (D. Minn. Oct. 9, 2015), *R&R adopted*, 2015 WL 6872459 (D. Minn. Nov. 9, 2015) (citations omitted).[11]

---

[9]  UPRC stated in a footnote that Louisiana law and Minnesota law consider essentially the same factors in each state's respective alter ego analysis.  (UPRC Opp. Memo., Pg. 6 n1 [doc. # 166].  R&L cited Louisiana law in its brief, without elaboration.  (R&L's Opp. Memo., pgs. 18-20 [doc. # 164].  The court agrees with UPRC that the factors are substantially the same under either state's law and do not affect the analysis.  *See e.g., SteriFx, Inc. v. Roden*, 939 So.2d 533, 538 (La. App. 2d Cir. 2006); *see also* discussion, *infra*.

[10]  Veil piercing applies to LLCs as well as corporations.  *Guava LLC v. Merkel*, Civ. Action No. 15-0254, 2015 WL 4877851, at *6–8 (Minn. Ct. App. Aug. 17, 2015).

[11]  However because the alter ego test for attribution of contacts in the personal jurisdiction context is less stringent than that for liability, personal jurisdiction only requires a

Under the first inquiry, relevant factors include:

insufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

*Victoria Elevator Co. of Minneapolis v. Meriden Grain Co., Inc.*, 283 N.W.2d 509, 512 (Minn.1979).

Nonetheless, doing business in corporate form for purposes of limiting individual liability is not wrong. *Id*. Rather, the corporate veil should be pierced only where the formalities of corporate existence are disregarded. *Id*.

Here, plaintiffs expend considerable effort to demonstrate the interrelatedness of the Taylor entities. However, this court already enjoys personal jurisdiction over all of the Taylor entities. The court focuses, instead, upon whether Robert Taylor, in his individual and/or representative capacity, is the alter ego of one or more of the Taylor entities (including Taylor Consolidated, Inc.).

The following facts are obtained from the Taylor entities' responsive pleadings:

- Robert G. Taylor was the sole shareholder of Taylor Consolidated Inc. when the Robert G. Taylor Trust was formed. The assets of TCI were transferred into the Robert G. Taylor Trust, pursuant to the direction and approval Robert Taylor.

- Robert G. Taylor is a beneficiary of the Robert G. Taylor Trust.

- The Robert G. Taylor Trust does not have a checking account or tax ID number, and does not file tax returns.

- Taylor Truck Lines does not own any tractors or trailers.

---

finding of a shell corporation *or* fraud/injustice, i.e. one of the two prongs. *See Stuart*, 772 F.2d at 1198 n12 (citations omitted).

- Taylor Consolidated Inc. is the parent company of Taylor Truck Line Inc., College City Leasing LLC, and Taylor Logistics Inc.

- Robert G. Taylor is the General Chief Manager of College City Leasing, LLC. Derek Brothers is the Chief Financial Officer of Taylor Consolidated Inc., Taylor Logistics Inc., Taylor Truck Line Inc., and College City Leasing, LLC. Derek Brothers and Robert G. Taylor receive a salary from Taylor Truck Line Inc.

- Robert G. Taylor is the president of Taylor Consolidated Inc., Taylor Logistics Inc. and Taylor Truck Line Inc.

- Taylor Consolidated Inc. has no employees other than Robert Taylor and Derek Brothers, and pays no salaries.

- Taylor Consolidated Inc. files a consolidated tax return with Taylor Truck Line Inc., College City Leasing, LLC, and Taylor Logistics Inc.

- College City Leasing LLC's president is Robert G. Taylor, and its Chief Financial Officer is Derek Brothers; it has no other employees.  College City Leasing, LLC does not pay any salaries.

- Taylor Logistics Inc. maintains office space in the same building as one of Taylor Truck Line's offices.

- Any distributions made by Taylor Logistics Inc. would be paid to Taylor Consolidated Inc.

(Answers [doc. #s 83, 121-122]).

The following (sometimes repetitive) facts may be gleaned from the depositions of Derek Brothers as corporate representative of the various Taylor entities:

- Taylor Consolidated is the sole member of College City Leasing.

- Taylor Logistics has a total of nine employees.

- College City Leasing has two employees:  Robert Taylor and Derek Brothers.

- It is "pretty common" in the trucking industry for the equipment to be owned by a company that is separate from the operating company.

- College City leases tractors to other companies other than Taylor Truck Line.

- Taylor Truck Line makes monthly lease payments to College City.  Cash is

11

transmitted once per month.

- College City leases approximately 240 tractor trailers to Taylor Truck Line.

- All transactions between College City and Taylor Truck Line are accounted for. Funds are transmitted to the bank account of the respective party.

- College City requires Taylor Truck Line to provide physical damage coverage for the cost of the trailer, plus liability insurance.  It is understood that liability coverage will be $1,000,000 – the amount required by federal motor carrier regulations.

- College City Leasing requires the same $1,000,000 liability coverage from all of its lessees, including third-parties.

- College City charges Taylor Truck Line the market rate to lease the tractors – i.e., the amount that Taylor Truck Line would have had to pay to rent a similar piece of equipment from another vendor.

- The sole member of Taylor Consolidated, Inc. is the Robert Taylor Trust.

- College City Leasing has approximately 40 other customers aside from Taylor Truck Line, comprising probably 20 to 30 percent of College City's income.

- College City Leasing requires its lessees, other than Taylor Truck Line, to keep reserves to ensure funding for maintenance and the like.

- Taylor Truck Line holds a note payable for $800,000 in favor of Robert Taylor that includes interest payments.

- Taylor Truck Line has no umbrella policy beyond the required $1,000,000 liability policy.

- Managers decide what coverages should be carried.  Some years, Robert Taylor is present for the decision-making process, sometimes not.

- College City's Statement of Cash Flows reflects inter-company balances amongst the Taylor entities.

- Taylor Logistics operates out of one corner (approximately one-eighth) of the same building as Taylor Truck Lines.  Taylor Logistics personnel are not dispersed throughout the building.

- Taylor Logistics pays an administrative fee of $787,000 to Taylor Truck Lines,

12

which includes rent and employees.

- The Taylor subsidiary companies make distributions to Taylor Consolidation.

- Taylor Consolidated decides when it wants to take a distribution from its subsidiaries.

- The Taylor entities maintain their own checking accounts.

- The general ledger of each of the subsidiaries tracks the transfer of funds from the various entities into Taylor Consolidated, Inc.

- Taylor Consolidated was formed so the Taylor entities could file a consolidated tax return.

- As CFO, Derek Brothers usually decides when to transfer funds from one entity to another.

- The Taylor entities frequently loan funds to each other.  No interest is paid on the loans.

- No one receives a salary from Taylor Consolidated Inc.

- Taylor Consolidated Inc. only makes distributions to the Robert G. Taylor Trust.

- Sometimes, Robert Taylor, as trustee, will direct Taylor Consolidated to make distributions or dividends to Robert Taylor, individually.

- Taylor Truck Line has a life insurance policy on Robert Taylor, with Taylor Truck Line as the beneficiary.

- Robert Taylor (and possibly Jean Taylor[12] and Derek Brothers) are officers of Taylor Consolidated.

- There are minutes of shareholder and director meetings for Taylor Consolidated, Inc. from shortly after its inception in January 2001 through 2015.

- Taylor Consolidated, Inc. has articles of incorporation and bylaws.

- The Taylor entities have financial statements and balance statements for at least 2012-2015.

---

[12]  Jean Taylor is Robert Taylor's spouse.

- The financial statement reflects distribution amounts.

- Taylor Consolidated Inc. determines whether or not to draw distributions from Taylor Truck Line Inc., College City Leasing, LLC, and Taylor Logistics, Inc.

- Taylor Consolidated makes a monthly distribution to its sole owner, the Robert Taylor Trust.

- The general ledger of each Taylor entity contains entries tracking the transfer of funds to Taylor Consolidated, Inc.

- Taylor Consolidated, Inc. is a guarantor on equipment financing loans obtained by College City Leasing.

- In the past, Robert G. Taylor, individually, has had to guarantee some of the financing loans.  If so, this is reflected in the financial statements.

- Despite the ability to do so, it is not the goal of Taylor Consolidated to pay out any excess cash to the trust.

- The intercorporate subsidiary advance balances are paid off each month.

- Each Taylor entity keeps a separate set of records that tracks inter-company transactions.

(Brothers Depos.; R&L and UPRC's Opp. Memos. [doc. #s 165-2,3, & 4; 166-6-29, 11].

The following facts are taken from Robert Taylor's deposition:

- Robert G. Taylor was the original owner of Taylor Consolidated, Inc.

- The Robert G. Taylor Trust was formed in 2007.  Taylor's individual ownership in Taylor Consolidated, Inc. was transferred to the Robert G. Taylor Trust.

- Robert G. Taylor does not know if the trust paid him any money for the transfer of ownership.

- Taylor created the trust so that when he died, his estate would not go through probate.

- Robert Taylor is not sure if he receives distributions from the trust.

- Robert Taylor does not know if he is the trustee of the Robert Taylor Trust

- Robert Taylor is not involved in the transfer of funds between the Taylor entities

14

on a daily basis.  However, the transfers are effected with Taylor's full authority and consent.

•       Taylor receives a distribution to cover his personal income taxes.

•       If Taylor needs a distribution to cover his tax liability, he asks Derek Brothers for the funds.

•       Taylor reviews shareholder minutes and resolutions, some of which Brothers signed using a stamp with Taylor's signature.

(Robert Taylor Depo., R&L Opp. Memo. [doc. # 165-1].

Applying the foregoing evidence to the *Victoria Elevator Co.* factors, the undersigned finds no indication that the Taylor entities, including Taylor Consolidated, Inc., are insufficiently capitalized – as a whole – for purposes of their corporate undertakings.  Moreover, there is no evidence that the Taylor entities – as a whole – were insolvent at the time of the accident.  In fact, Taylor Trucking had procured liability coverage in the amount mandated by federal regulations – the same sum that College Leasing required from all of its third-party lessees.  The companies also advance funds to one other, on an as needed basis.

Importantly, the evidence confirms that the entities maintained corporate formalities by holding shareholder meetings and the like.  Furthermore, Taylor Consolidated, Inc. paid distributions/dividends on a regular basis to the Robert G. Taylor Trust.[13]

The court recognizes that Taylor Consolidated, Inc. received distributions from its subsidiaries whenever it desired.  However, there is no indication that the subsidiaries were unable to meet any obligations as a result of these distributions.  Moreover, there is no evidence

---

[13]   While there is evidence that Taylor Consolidated, Inc. provided Robert Taylor with a distribution to cover his personal income taxes, there is no indication that these transactions were hidden or "off the books."  Merely because a corporate officer in a closely-held corporation enjoys unbridled authority to act for the corporation is not determinative.  *See In re Lewensten*, Civ. Action No. 88-186, 1989 WL 38623, at *5–6 (Bankr. D. Minn. Apr. 20, 1989).

that officers or directors of the Taylor entities were non-functioning.  To the contrary, meetings were held, resolutions issued, and corporate records maintained.  Finally, there is no evidence that the Taylor entities existed as a mere facade for Robert Taylor's individual dealings.

In sum, upon consideration of plaintiffs' evidence, together with the Taylor entities' admissions,[14] the court finds that UPRC and R&L have not made a prima facie showing that Robert Taylor (individually, or as trustee of the Robert G. Taylor Trust), is the alter ego of any of the Taylor entities (including Taylor Consolidated, Inc.).  To be sure, there is evidence that the Taylor entities themselves are closely intertwined and symbiotic.  However, plaintiffs have not met the additional step of showing that Robert Taylor is the alter ego of these corporations, individually, or as a whole.  *See Jackson, supra*, (court declined to find that corporations were alter egos of one another for jurisdictional purposes where corporate formalities were maintained and despite the presence of factors to the contrary).  Thus, the Taylor entities' waiver of personal jurisdiction in this case may not be imputed to Robert Taylor.  As such, the court lacks personal jurisdiction over Taylor in his individual and representative capacities.[15]

---

[14] The court also reviewed the allegations in plaintiffs' amended complaints.  However, where the allegations prove conclusory or contradicted by plaintiffs' own evidence, the court has not credited them.  In addition, the court declines to accord dispositive weight to the affidavit of URPC's expert CPA, Robert Hancock.  (UPRC Opp. Memo., Exh. L [doc. # 166-13]).  Many of Mr. Hancock's statements pertain to the interrelatedness of the Taylor entities or the failure of Robert Taylor to distinguish between his individual interests and his role as trustee of the Robert G. Taylor Trust.  These issues, however, are distinct from whether Robert G. Taylor, either individually or in his representative capacity, is an alter ego of one or all of the Taylor entities.  Insofar as Hancock opined as to this ultimate issue, it remains an issue reserved to the court, and/or is not supported by the evidence adduced by plaintiffs.

[15] The undersigned's recommended disposition of Robert Taylor's motions to dismiss for lack of personal jurisdiction forecloses the need and authority to address Taylor's alternative motions to dismiss for failure to state a claim upon which relief can be granted.  *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 (5th Cir.1999) (a court must find jurisdiction, both subject

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the Rule 12(b) motions to dismiss [doc. # 134 & 149] filed by Robert G. Taylor Trust and Robert G. Taylor, as trustee of the Robert G. Taylor Trust, be GRANTED IN PART, and that Union Pacific Railroad Company, R & L Builders Supply, Inc., and R & L Properties of Oak Grove's claims against Robert G. Taylor Trust be DISMISSED, with prejudice, Fed.R.Civ.P. 12(b)(6), and Union Pacific Railroad Company, R & L Builders Supply, Inc., and R & L Properties of Oak Grove's claims against Robert G. Taylor as trustee of the Robert G. Taylor Trust, be DISMISSED without prejudice, Fed.R.Civ.P. 12(b)(2).

IT IS FURTHER RECOMMENDED that the Rule 12(b)  motions to dismiss [doc. #s 143 & 145] filed by Robert G. Taylor, in his individual capacity, be GRANTED IN PART, and that Union Pacific Railroad Company, R & L Builders Supply, Inc., and R & L Properties of Oak Grove's claims against Robert G. Taylor, individually, be DISMISSED, without prejudice, Fed.R.Civ.P. 12(b)(2).

IT IS FURTHER RECOMMENDED that the motions [doc. #s 134, 149, 143, & 145] otherwise be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any

---

matter and personal, before determining the validity of a claim).

objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 31st day of October 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE