# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY | CIVIL ACTION NO.  15-0074 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TAYLOR TRUCK LINE, INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

--(consolidated with)--

| | |
|---|---|
| R & L BUILDERS SUPPLY, INC., ET AL. | CIVIL ACTION NO. 15-2460 |
| VERSUS | JUDGE ROBERT G. JAMES |
| UNION PACIFIC RAILROAD COMPANY, ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court are motions for summary judgment filed by Prewett Enterprises, Inc.

("Prewett") [Doc. No. 125], Union Pacific Railroad Co. ("Union Pacific") [Doc. No. 132], Hulcher

Services, Inc. ("Hulcher") [Doc. No. 141], and jointly by College City Leasing, LLC ("College City"),

Daniel Shackleford ("Shackleford"), Taylor Consolidated, Inc. ("Taylor Consolidated"), Taylor Logistics,

Inc. ("Taylor Logistics"), and Taylor Truck Line, Inc. ("Taylor Truck") [Doc. No. 160].  R & L Builders

Supply, Inc. ("Builders Supply") and R & L Properties of Oak Grove, LLC ("Properties") have asserted

claims against these parties for damage to land from a train derailment and the derailment clean-up.  In their

motions, the parties do not contest Properties' ownership interest in the Land, but move to dismiss Builders

Supply's claims against them, arguing that Builders Supply has no evidence of its interest in the land.[1]

Additionally, the moving parties argue that Builders Supply has failed to establish that it suffered a loss from

cross ties located on the land.  Builders Supply has opposed the motions.  [Doc. Nos. 131, 139, 140 &

163].  Some of the moving parties have filed replies in support of their motions. [Doc. Nos. 147 & 167].

For the following reasons, the motions for summary judgment are GRANTED, and Builders

Supply's claims are DISMISSED WITH PREJUDICE.

## I.    FACTS AND PROCEDURAL HISTORY

On October 5, 2014, Shackleford was operating a 2013 Kenworth tractor with trailer and dolly

(hereinafter "tractor trailer") loaded with a Terex RT-780 crane.  The tractor trailer was owned by College

City, but leased to Taylor Truck.[2]

At approximately 1:00 p.m., Shackleford was driving the tractor trailer south on U.S. Highway 165

in Mer Rouge, Louisiana.  At the intersection of 165 and U.S. Highway 425/La. Highway 2, Shackleford

stopped at the stop sign and then turned left onto U.S. Highway 425/La. Highway 2.  He then proceeded

to a highway/railway grade crossing over a Union Pacific main line railroad track.  The crossing is protected

by railroad pavement markings, crossbuck signs, flashing lights, gates, and bells.

As Shackleford attempted to drive over the crossing, the tractor trailer became lodged, straddling

the tracks. He exited the tractor to attempt to extricate the lowboy trailer, but did not notify law

enforcement or Union Pacific.

---

[1]Prewett filed the initial motion for summary judgment, and its arguments were adopted by the
remaining parties.

[2]Taylor Logistics was the shipment broker.

While Shackleford's tractor trailer was lodged on the tracks and before he could extricate it, a Union Pacific train traveling north on the track, which runs parallel to U.S. Highway 165/La. Highway 138, began to approach to crossing. The train activated its flashing lights, bell, and crossing gate. When the Union Pacific train crew saw the tractor trailer at the crossing, crew members applied the emergency brakes in an effort to avoid the collision. The crew members were unsuccessful, and the train collided with the lowboy trailer and attached crane. As a result of the collision, approximately 17 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property.

Properties owns the land located along Church Street in Mer Rouge[3] ("the Land") where at least some of the cars and other debris came to rest after the collision and where reclamation and clean up took place without permission of Properties. The members of Properties, a limited liability company organized under Louisiana law, are Linda and Randle McLarrin. The McLarrins are also officers of Builders Supply, a Louisiana corporation which operates a building supply and equipment facility on Andrews Lane in Mer Rouge.

Properties and Builders Supply have an existing written lease, entered into on January 5, 2012, which contains a legal description of the Andrews Lane property.[4] [Doc. No. 125-9]. Approximately one

---

[3]The legal description of the land is as follows:

Lots 1 through 12, Block 23 inclusive of the T.H.B. Andrews Addition to Mer Rouge, Louisiana, as per plat thereof recorded in the Office of the Clerk of Court of Morehouse Parish, Louisiana, LESS AND EXCEPT the North 75 feet of Lots 10, 11, and 12, the North 75 feet of the East 5 feet of Lot 9, and the North 30 feet of Lots 7, 8 and 9 of said Block 23.

[4]There is no allegation of damage to the site of Builders Supply's business operations on Andrews Lane.

year before the accident, Properties purchased the Land for the purpose of expanding Builders Supply's business operations.  The written lease was not amended to include the Land, nor was another written lease executed prior to the Randle McLarrin testified that he intended to execute a lease between the two entities (as President of both entities), but no written lease covering the Land was executed prior to the accident.

Prior to the accident, Builders Supply sold topsoil from the Land and also stored used cross ties there.  Trusses and pilings for the expansion had been procured, and the site had been staked out. However, no buildings had been erected, and Builders Supply's operations had not otherwise been expanded to the Land.

On January 14, 2015, Plaintiff Union Pacific brought suit against Taylor Truck, Taylor Logistics, Shackleford, and College City.[5]

On October 1, 2015, Builders Supply and Properties brought suit against Union Pacific, Taylor Truck, Taylor Logistics, College City, Shackleford, and B & P Enterprises, Inc.  In their Complaint, Properties states that it was the owner of "certain property located in Mer Rouge, LA, and **leased to** [Builders Supply]. [Doc. No. 1, ¶ XXVIII (emphasis added)].  As a result of Properties' ownership and Builders Supply's alleged lease of the Land, they jointly seek recovery of damages to the Land, damages to trees on the Land, damages to buildings on the Land, damages to cross ties and other building materials on the Land, loss of lumbar products because of the lack of anticipated storage space on the Land, loss

---

[5]Union Pacific, Builders Supply, and Properties all later amended to assert claims against the Robert G. Taylor Irrevocable Trust and against Robert G. Taylor, individually and as trustee of the Robert G. Taylor Irrevocable Trust.  Those claims have since been dismissed either with or without prejudice and are no longer pending in this Court.

of revenues from the anticipated expansion of the business operations, added costs to remediate hazardous chemicals, loss of value of the Land, and loss of the ability to sell top soil from the Land.

On November 4, 2015, the Builders Supply and Properties suit was consolidated with the Union Pacific suit under Civil Action No. 3:15-0074.

On December 3, 2015, Prewett filed a corporate disclosure statement identifying itself as the Defendant listed as B & P Enterprises, Inc.  On February 22, 2016, Builder Supply and Properties amended their complaint to add Hulcher as a defendant and to substitute Prewett as the proper Defendant in place of B & P Enterprises, Inc.[6] [Doc. No. 74].  Builders Supply and Properties assert claims against Prewett and Hulcher related to the reclamation and clean up.

After discovery was complete, the instant motions, oppositions, and replies were timely filed.  As these motions address the same issue–whether Builders Supply has a legal interest in the Land–, the Court will consider the related motions and memoranda together.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record

---

[6]Prewett apparently does business under the name " B & P Enterprises."

5

which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

    **B.**    **Builders Supply's Legal Interest in Land**

6

The moving parties argue that they are entitled to summary judgment because Builders Supply's claims are based on a lease of the Land from Properties, and Builders Supply cannot show that a lease existed at the time of the train derailment and subsequent cleanup.  Builders Supply opposes summary judgment on the alternative bases that, at the time of the derailment, either it had (1) an oral lease based on the close identification of interest between the entities and Randle McLarrin's intent as President of both entities, or (2) an enforceable intent to enter into a future lease.  At the least, Builders Supply argues that it has raised genuine issues of material fact for trial.  However, the moving parties reply that these arguments are not supported by Randle McLarrin's deposition testimony that he did not know if there was a lease and that there was no amount of rent agreed upon, and Builders Supply cannot rely on Mr. McLarrin's self-serving affidavit to contradict his prior deposition testimony.

"The existence or nonexistence of a lease [under Louisiana law] is a question of fact." *Southern Treats, Inc. v. Titan Properties, L.L.C.*, 40,873 (La. App. 2 Cir. 4/19/06), 927 So. 2d 677, 683 (citing *Landers v. Integrated Health Services of Shreveport*, 39,739 (La.App. 2d Cir.5/11/05), 903 So.2d 609) (other citations omitted).  A "[l]ease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." LA. CIV. CODE ART. 2668.[7]  Under LA. CIV. CODE ART. 2681, a lease may be made oral or written, but the essential elements of the lease must be met in either form: "the thing, the price (rent), and consent of the parties."  *Southern Treats,* 927 So.2d at 683.  "When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do

---

[7]While "[t]he consent of the parties as to the thing and the rent is essential," they are "not necessarily sufficient for a contract of lease."  LA. CIV. CODE ART. 2668.

7

not intend to be bound until the contract is executed in that form." La. Civ. Code Ann. Art. 1947.

"The intent to create a lease may be inferred from the established facts, circumstances, and acts of the contracting parties." *Southern Treats*, 927 So.2d at 683 (citing *Pelican State Bank v. Webb*, 175 So. 855 (La. App. 2d Cir.1937)). "Either party may enforce a contract to lease at a future time if there is agreement as to the thing and rent, unless the parties understood it would not be binding until reduced to writing or agreement on other terms." *Id.* (citing La. Civ. Code Art. 2620).

In this case, Builders Supply has failed to establish that it had a legal interest in the Land at the time of the Union Pacific derailment and reclamation activities. There was no legally binding written or oral lease agreement or agreement to lease in the future.

First, it is undisputed that no written lease exists, which is the form that appears to have been contemplated by the parties based on the testimony of Randle McLarrin and the prior practice between Properties and Builders Supply. In his deposition, Randle McLarrin testified that he would guess that his accountant had already prepared a written lease of the Land, but he would just be "speculating." [Doc. No. 125-4, McLarrin Depo., p. 145]. He further confirmed that his practice was to have "documentation" or "lease document" from Properties to Builders Supply. *Id.* Later in his deposition, Mr. McLarrin testified that he was "going to tell you there was a lease it," but then admitted that he would have to "look and see" if there was a lease and that it was only a "guess" that his accountant would have had a lease executed. [Doc. No. 125-4 McLarrin Depo., p. 161]. However, neither Mr. McLarrin nor his accountant, J. Michael Dowdy, produced any written lease for the Land. The only lease produced was the inapplicable 2012 lease.

Second, Builders Supply has failed to establish that the essential elements of an oral lease–the thing,

8

consent, and rent–were met at the time of the train derailment.  After being unable to produce a written

lease, in a later corporate deposition for Properties, as well as in response to the instant motions, Mr.

McLarrin says an "oral agreement" or lease was in place at the time of the derailment. [Doc. No. 147-3,

Properties Depo. through Mr. McLarrin, p. 29].[8]  Builders Supply relies on the intent of Mr. McLarrin,

as president of both entities, to support this argument.  Mr. McLarrin's testimony provides evidence that

he intended, at some point, to lease the Land from Properties to Builders Supply.  Likewise, the fact that

Builders Supply stored cross ties on the Land and sold the top soil from the Land also evidences some

intent, but intent (or the consent) of the parties is not enough.  The fact that Properties and Builders Supply

have the same members and officers, respectively, and Mr. McLarrin acts on behalf of both entities does

not allow the Court to ignore the legal reality that these are two separate entities.  As with any two entities,

Builders Supply must show that the essential elements of an oral lease are established.  Although Builders

Supply has shown the thing that was to be leased and has raised at least a genuine issue of material fact as

to consent, Builders Supply has failed to raise a genuine issue of material fact for trial that rent had been

determined or, at the least, was determinable under an agreed-upon method.  *See Southern Treats,* 927

So. 2d at 683 ("The price must be certain and determinable . . . The amount should either be fixed in a sum

certain or determinable through a method agreed to by the parties." ) (citing LA. CIV. CODE ART. 2676).

Mr. McLarrin admitted as much, testifying:

> Q:      How much would Properties have leased the [Land] to Builders Supply, or do–did you

---

[8]As discussed with regard to Mr. McLarrin's affidavit, a witness cannot contradict, without
explanation, earlier sworn testimony, which is exactly what Mr. McLarrin appeared to do at his
corporate deposition several months later.  Regardless, however, even if he has raised a issue of fact as
to the consent of the entities, Builders Supply cannot show all essential elements of a oral lease.

have that envisioned yet?

A:      No.

[Doc. No. 147-3, Properties Depo. through Mr. McLarrin, p. 114]. Explaining further, Mr. McLarrin says

only that he "take[s] it out of one pocket and put[s] it in the other," and that "[i]t works hand in hand," but

without explaining what one be handed from Builders Supply to Properties or how the amount would be

determined. *Id.*

The Court has considered Mr. McLarrin's affidavit submitted in support of Builders Supply's

opposition to the motions for summary judgment. However, as the moving parties properly point out,

Builders Supply cannot defeat summary judgment by relying on an affidavit that contradicts sworn

testimony. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citation omitted)

("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an

affidavit that impeaches, without explanation, sworn testimony."); *Love v. Motiva Enterprises LLC*, No.

08-30996, 2009 WL 3334610, at *2 (5th Cir. Oct. 16, 2009) ("[A]n affidavit in opposition to summary

judgment that contradicts without explanation deposition testimony is properly disregarded."). Mr.

McLarrin's affidavit impeaches his personal deposition testimony that he did not know whether there was

a lease in place when he avers "[t]hat when . . . Properties purchased the subject property [i.e. the Land]

where the derailed train cars and engines were placed for remediation efforts, in his capacity as president

of both R & L entities, he had already entered into an oral lease of the [Land] to . . . Builders Supply."

[Doc. No. 131-3]. Further, even if this affidavit testimony is consistent with Mr. McLarrin's later testimony

as the corporate representative of Properties, it does not help the analysis because his statement goes again

only to the intent of the entities. Certainly, the Court and everyone can agree that the R & L entities

intended to enter into a lease at some point on the Land, but Builders Supply must still be able to show at trial that the elements were met prior to the derailment.

Further, Mr. McLarrin's affidavit testimony clearly contradicts his deposition on the issue of the rent or the determination thereof.  In his affidavit, he attempts to shore up the argument that he had an oral lease by averring that "the specific additional lease sum to be paid by . . . Builders Supply was to be determined by the amount of financing required to construct the two new buildings, which is the same form of lease R & L entities have on the Andrews Lane property."[9] [Doc. No. 131-3].  However, this is a direct contradiction of his deposition testimony and cannot now be relied upon by the Court.

Finally, Builders Supply's alternative argument that it had an agreement to lease in the future fares no better than its oral lease argument because, again, there was no determination of rent or the agreed-upon method by which rent could be determined.  Without this essential element, Builders Supply has not established its interest in the Land.  Accordingly, the motions for summary judgment are GRANTED in this regard, and Builder Supply's claims based on the Land are DISMISSED WITH PREJUDICE.

## C.    The Cross Ties

The moving parties raise one final issue with regard to Builders Supply.  Builders Supply has presented evidence that it had stored cross ties on the Land and seeks to recover damages from the loss of these.  Regardless of the existence of a lease between the R & L entities, Builders Supply had the implicit

---

[9]While the Court has rejected this contradictory portion of Mr. McLarrin's affidavit, it is worthy of note that the statement in his affidavit also appears contradictory of the tax documents filed by Properties.  Despite Builders Supply's contention that this was the previously agreed-upon method to calculate the rent for the Andrews Lane property, it does not appear that Properties received any rent from Builders Supply in 2014 or 2015. [Doc. No. 158, Exh. N].

permission of Properties to have the cross ties stored on the Land.  Thus, it may have a valid claim if it proves that the actions of one or more defendant caused damage to the cross ties.

The moving parties argue further, however, that there is no evidence that there were fewer cross ties after the derailment than before, or that the moving parties' caused damage to the cross ties.  They point specifically to evidence that the cross ties were contaminated with arsenic prior to the derailment. In response to Prewett's statement of undisputed facts, Builders Supply states that Prewett were moved by grabber equipment, there are photographs showing damage, and that, if there are carcinogens in the cross ties from the leaching process, that process was "hastened or exacerbated by the crushing or breaking of the cross ties during clean up efforts."

Based on the facts argued, the Court finds that the record is insufficient at this time to dismiss Builders Supply's cross tie claim.  Thus, to this extent, the motions for summary judgment are DENIED, subject to re-urging at trial or further consideration.

## III.    CONCLUSION

For the foregoing reasons, the motions for summary judgment [Doc. Nos. 125, 132, 141 & 160] filed by Prewett, UP, Hulcher, and jointly by College City,  Shackleford, Taylor Consolidated, Taylor Logistics, and Taylor Truck are GRANTED IN PART and DENIED IN PART.  To the extent that Builders Supply has asserted claims based on or related to the Land, the motions are GRANTED, and those claims are DISMISSED WITH PREJUDICE.  To the extent that Builders Supply asserts a claim for damages to cross ties stored on the Land, the motion is DENIED at this time, subject to re-urging at trial or further consideration.

MONROE, LOUISIANA, this 27th day of February, 2017.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

13