# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY | CIVIL ACTION NO.  15-0074 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TAYLOR TRUCK LINE, INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

--(consolidated with)--

| | |
|---|---|
| R & L BUILDERS SUPPLY, INC., ET AL. | CIVIL ACTION NO. 15-2460 |
| VERSUS | JUDGE ROBERT G. JAMES |
| UNION PACIFIC RAILROAD COMPANY, ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is an unopposed Motion for Partial Summary Judgment Regarding Allegations of Inadequate Training of the Train Crew [Doc. No. 188] filed by Union Pacific Railroad Co. ("Union Pacific").  For the following reasons, the motion for summary judgment is GRANTED, and opposing parties are precluded from presenting testimony or arguing to the jury that the Union Pacific train crew were not properly trained or instructed or were not qualified to operate the locomotive and train.

## I.    FACTS AND PROCEDURAL HISTORY

On October 5, 2014, Shackleford was operating a 2013 Kenworth tractor with trailer and dolly (hereinafter "tractor trailer") loaded with a Terex RT-780 crane.  The tractor trailer was owned by College City, but leased to Taylor Truck.[1]

---

[1]Taylor Logistics was the shipment broker.

At approximately 1:00 p.m., Shackleford was driving the tractor trailer south on U.S. Highway 165 in Mer Rouge, Louisiana.  At the intersection of 165 and U.S. Highway 425/La. Highway 2, Shackleford stopped at the stop sign and then turned left onto U.S. Highway 425/La. Highway 2.  He then proceeded to a highway/railway grade crossing over a Union Pacific main line railroad track.  The crossing is protected by railroad pavement markings, crossbuck signs, flashing lights, gates, and bells.

As Shackleford attempted to drive over the crossing, the tractor trailer became lodged, straddling the tracks. He exited the tractor to attempt to extricate the trailer, but did not notify law enforcement or Union Pacific.

According to Shackleford, approximately two minutes later, before he could extricate the tractor trailer, a Union Pacific train traveling north on the track, which runs parallel to U.S. Highway 165/La. Highway 138, began to approach the crossing.  The train activated its flashing lights, bell, and crossing gate.  At the time of the accident, Union Pacific engineer, Russell Rowe, was operating the lead locomotive, and Union Pacific conductor, James Kovalyshyn, was in the cab as well.  When they saw the tractor trailer at the crossing, crew members applied the emergency brakes in an effort to avoid the collision.  The crew members were unsuccessful, and the train collided with the trailer and attached crane.  As a result of the collision, approximately 17 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property, including land owned by R & L Properties of Oak Grove, LLC.

On January 14, 2015, Plaintiff Union Pacific brought the instant suit against Taylor Truck,

Taylor Logistics, Shackleford, and College City.[2]  On November 4, 2015, a lawsuit filed by R & L

Properties of Oak Grove, LLC, and R & L Builders Supply, Inc., was consolidated with this lawsuit.

After discovery was complete, Union Pacific filed the instant motion, anticipating that the

trucking company defendants or the R & L plaintiffs might argue or present evidence that Union

Pacific was negligent for allowing the train to be operated by an inadequately trained or instructed

locomotive engineer and conductor.  Despite extensive briefing on numerous motions in this case,

no party filed an opposition memorandum to Union Pacific's motion.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment,

identifying each claim or defense--or the part of each claim or defense--on which summary judgment

is sought. The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The

moving party bears the initial burden of informing the court of the basis for its motion by identifying

portions of the record which highlight the absence of genuine issues of material fact. *Topalian v.

Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting

that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of

materials in the record . . . ).  A fact is "material" if proof of its existence or nonexistence would

affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*,

---

[2]Union Pacific, Builders Supply, and Properties all later amended to assert claims against
the Robert G. Taylor Irrevocable Trust and against Robert G. Taylor, individually and as trustee
of the Robert G. Taylor Irrevocable Trust.  Those claims have since been dismissed either with or
without prejudice and are no longer pending in this Court.

3

477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

Unless the moving party meets its initial burden, the Court may not grant a motion for summary judgment, even if the motion is unopposed.  *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995).  However, pursuant to Local Rule 56.2, since no party filed an opposition and statement of contested material facts, Union Pacific's statement of uncontested material facts is deemed admitted for purposes of this motion.  LR 56.2 ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.).

### B.     Training of Crew

Union Pacific asserts that it is entitled to summary judgment on issues related to the training or instruction of its crew because such claims or defenses are preempted by federal law and thus barred.

 The Supremacy Clause to the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const., ART. VI, CL.2.  Congress has the power under the Supremacy Clause to preempt state law.  "Preemption occurs when Congress expresses a clear intent to occupy a particular field."  *Michigan Southern R.R. Co. v. City of Kendallville*, IN, 251 F.3d 1152, 1153 (2001).

The Federal Railway Safety Act ("FRSA") was enacted to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101.  The

FRSA contains an express preemption[3] provision:

> (a)   National uniformity of regulation.--(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> (2)   A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order–
>
> (A)   is necessary to eliminate or reduce an essentially local safety or security hazard;
>
> (B)   is not incompatible with a law, regulation, or order of the United States Government; and
>
> (C)   does not unreasonably burden interstate commerce.
>
> (b)[4]   Clarification regarding State law causes of action.--(1) Nothing in this section shall be construed to preempt an action under State law

---

[3]In addition to express preemption, the Supreme Court has recognized "field preemption where state law intrudes in an area that Congress has reserved for federal jurisdiction," and "conflict preemption, where enforcement of state law cannot be accomplished while simultaneously complying with federal law." *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001) (citing *English v. General Electric Co.*, 496 U.S. 72 (1990)).

[4]On August 3, 2007, Congress enacted the Implementing Regulations of the 9/11 Commission Act of 2007, Pub.L. 110-53, 121 Stat. 266, which among other actions, amended the preemption provision of 49 U.S.C. § 20106.  This amendment did not change the previous preemption law, but clarified "that when a party alleges that a railway *failed to comply* with a federal standard of care established by regulation or with its own plan, rule or standard created pursuant to a federal regulation, preemption will not apply." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1215 (10th Cir. 2008); *see also Grade v. BNSF Ry. Co.*, 676 F.3d 680, 684-85 (8th Cir. 2012).

seeking damages for personal injury, death, or property damage alleging that a party–

    (A)    has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

    (B)    has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

    (C)    has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

    (2)    This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

(c)    Jurisdiction.--Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

49 U.S.C. § 20106.

Despite the express preemption provision, the United States Court of Appeals for the Fifth Circuit has found that "FRSA preemption is even more disfavored than preemption generally." *United Transp. Union v. Foster,* 205 F.3d 851, 860 (5th Cir.2000) (citing *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 515 (5th Cir.1999)).

The restrictive terms of its preemption provision "indicate[ ] that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (emphasis added). When applying FRSA preemption, the Court eschews broad categories such as "railroad safety," focusing instead on the specific subject matter contained in the federal regulation. *See id.* at 665-75, 113 S.Ct. 1732. In sum, when deciding whether the FRSA preempts state laws designed

6

to improve railroad safety, we interpret the relevant federal regulations narrowly to ensure that the careful balance that Congress has struck between state and federal regulatory authority is not improperly disrupted in favor of the federal government.

*Id.* Thus, the Court turns to the regulations at issue.

In this case, the Secretary of Transportation has promulgated regulations which set the "[f]ederal safety standards for the eligibility, training, testing, certification and monitoring" of locomotive engineer, so that "only qualified persons operate a locomotive or train." 49 C.F.R. § 240.1. The Secretary has further established federal safety standards for the eligibility, training, testing, certification, and monitoring of conductors. *See* 49 C.F.R. § 242. These standards are clearly within federal authority, and claims by opposing parties for inadequate training or instruction are preempted unless they can meet the showing required by subsection (b).

As the opposing parties do not identify any federal standard or internal rule that Union Pacific violated in the training or instruction of its crew, or otherwise meet the requirements of subsection (b), any claims of negligent or inadequate training or instruction by the opposing parties are precluded. *See Lombary v. Norfolk Southern Ry. Co.*, Cause No. 1:12-CV-210, 2014 WL 2468612, at * (N.D. Ind. June 3, 2014) ("Plaintiff's claims for negligent training, education, instruction, supervision, and qualification are precluded by the FRSA . . . . the Secretary of Transportation issued comprehensive regulations covering the subjects of training, instruction, education, qualification, and supervision of railroad employees (Parts 217 and 240) and it is undisputed that Norfolk complied with the federal operating and training rules."); *see also Union Pac. R. Co. v. California Pub. Utilities Comm'n*, 346 F.3d 851, 868 (9th Cir. 2003) ("It is clear that the federal training regulations do 'substantially subsume' the subject of employee training."); *Carter v. National R.R. Passenger Corp.*, 63 F. Supp.3d 1118, 1155 (N.D. Ca. 2014).

7

**III.     CONCLUSION**

For the foregoing reasons, Union Pacific's Motion for Partial Summary Judgment Regarding Allegations of Inadequate Training of the Train Crew [Doc. No. 188] is GRANTED.  Opposing parties are precluded from presenting testimony or arguing to the jury that the Union Pacific train crew were not properly trained or instructed or were not qualified to operate the locomotive and train.

MONROE, LOUISIANA, this 1st day of March, 2017.


_____
**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**