UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY** | **CIVIL ACTION NO. 15-0074** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **TAYLOR TRUCK LINE, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

--(consolidated with)--

| | |
|---|---|
| **R & L BUILDERS SUPPLY, INC., ET AL.** | **CIVIL ACTION NO. 15-2460** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **UNION PACIFIC RAILROAD COMPANY, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

RULING

Pending before the Court are motions for summary judgment on the issue of negligence [Doc. Nos. 182 & 187] filed by Prewett Enterprises, Inc. ("Prewett") and Hulcher Services, Inc. ("Hulcher"). Prewett and Hulcher move the Court for summary judgment, arguing that R & L Properties of Oak Grove, LLC ("Properties") and/or R & L Builders Supply, Inc. ("Builders Supply") have failed to show that they committed any negligent acts or omissions and that the Court should dismiss all claims of "negligence, improper actions and/or damage to the property." [Doc. No. 182]. Properties and Builders Supply oppose these motions.

For the following reasons, the motions for summary judgment on the issue of negligence are GRANTED IN PART AND DENIED IN PART.

I.  **FACTS AND PROCEDURAL HISTORY**

On October 5, 2014, Daniel Shackleford ("Shackleford") was operating a 2013 Kenworth

tractor with trailer and dolly (hereinafter "tractor trailer") loaded with a Terex RT-780 crane. The tractor trailer was owned by College City, but leased to Taylor Truck.

At approximately 1:00 p.m., Shackleford was driving the tractor trailer south on U.S. Highway 165 in Mer Rouge, Louisiana. At the intersection of 165 and U.S. Highway 425/La. Highway 2, Shackleford stopped at the stop sign and then turned left onto U.S. Highway 425/La. Highway 2. He then proceeded to a highway/railway grade crossing over a Union Pacific Railroad Co. ("Union Pacific") main line railroad track. The crossing is protected by railroad pavement markings, crossbuck signs, flashing lights, gates, and bells.

As Shackleford attempted to drive over the crossing, the tractor trailer became lodged, straddling the tracks. He exited the tractor to attempt to extricate the trailer, but did not notify law enforcement or Union Pacific.

According to Shackleford, approximately two minutes later, before he could extricate the tractor trailer, a Union Pacific train traveling north on the track, which runs parallel to U.S. Highway 165/La. Highway 138, began to approach the crossing. The train activated its flashing lights, bell, and crossing gate. At the time of the accident, Union Pacific engineer, Russell Rowe, was operating the lead locomotive, and Union Pacific conductor, James Kovalyshyn, was in the cab as well. When they saw the tractor trailer at the crossing, crew members applied the emergency brakes in an effort to avoid the collision. The crew members were unsuccessful, and the train collided with the trailer and attached crane. As a result of the collision, approximately 17 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property, including land owned by Properties.

On January 14, 2015, Plaintiff Union Pacific brought the instant suit against Taylor Truck,

Taylor Logistics, Shackleford, and College City.[1] On November 4, 2015, a lawsuit filed by Properties and Builders Supply was consolidated with this lawsuit.

Properties owns the land located along Church Street in Mer Rouge ("the Church Street Land") where train cars and other debris came to rest after the collision and where reclamation and clean up took place, allegedly without permission of Properties. Builders Supply operates a building supply and equipment facility on Andrews Lane in Mer Rouge.

Approximately one year before the accident, Properties purchased the Church Street Land for the purpose of expanding Builders Supply's business operations. Prior to and at the time of the accident, Builders Supply was storing used cross ties on the Church Street Land.

On February 27, 2017, the Court granted in part and denied in part motions for summary judgment filed by Prewett, Hulcher, and the Taylor Entities. [Doc. No. 288]. The Court ruled that Builders Supply did not have a lease for the affected land, and, thus, it could not assert any claims for damages to the Church Street Land. However, the Court found that there was a genuine issue of material fact for trial on the alleged damage to Builders Supply's cross ties stored on the Church Street Land.

Properties and Builders Supply have asserted negligence claims against Prewett and Hulcher for alleged damage they caused during the clean up and reclamation activities. In the instant motions, Prewett and Hulcher move the Court to find that Properties and Builders Supply have failed to raise a genuine issue of material fact for trial that they committed any act or omission of

---

[1]Union Pacific, Builders Supply, and Properties all later amended to assert claims against the Robert G. Taylor Irrevocable Trust and against Robert G. Taylor, individually and as trustee of the Robert G. Taylor Irrevocable Trust. Those claims have since been dismissed either with or without prejudice and are no longer pending in this Court.

negligence. Properties and Builders Supply oppose the motions. [Doc. Nos. 225 & 232]. Prewett and Hulcher have filed replies. [Doc. Nos. 242 & 247]. Properties and Builders Supply have filed a sur-reply. [Doc. No. 284].

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

### B. Negligence

Prewett and Hulcher contend that Properties and Builders Supply assert four causes of action: (1) damages from the collision that resulted in debris on the Church Street Land; (2) trespass on the Church Street Land as a result of the collision and/or cleanup; (3) damages from the clean up entities for digging, dredging road construction, truck crossing, and impaction of the ground allegedly done

4

in an improper manner; and (4) residual damage to the property as a result of the clean up. In this motion, Prewett and Hulcher address the third and fourth categories, arguing that Properties and Builders Supply cannot establish the standard of care or that they, as the clean up entities, breached that standard through any negligent act or omission. They argue further that "the responsibility for any post-clean-up damage to the land reverts back to the original cause of the collision, not to the 'clean-up crew.'" [Doc. No. 182]; *see also* [Doc. No. 187]. Prewett and Hulcher move for summary judgment on all claims of negligence, improper actions "and/or damage to the property[,]" reserving the claims of trespass which are the subject of other pending motions. *Id.*; *see also* [Doc. No. 187 (Hulcher adopted Prewett's motion and also moved "to dismiss certain claims brought by . . . Properties . . . and Builders [Supply] against Hulcher because no party, witness, or expert can testify regarding any negligence or omission by Hulcher; therefore, the responsibility for any post clean of damage to the land in questions falls upon the parties responsible for the original collision and derailment, not the contractors engaged by the railroad to assist in the cleanup operations.").

Negligence actions are governed by Louisiana Civil Code article 2315. Louisiana courts employ a duty-risk analysis for such claims. Under this analysis, a plaintiff must prove the following by a preponderance of the evidence: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of protection element); and (5) actual damages (the damages element). *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)). All of these

5

elements must be present to impose liability. *See Richard v. Swiber*, 98–1515 (La. App. 1 Cir. 9/24/99); 760 So.2d 355, 359.

Prewett and Hulcher argue that Properties and Builders Supply have failed to present evidence that they committed any negligent act. They point specifically to the testimony of Randle McLarrin ("McLarrin"), the principal for both entities. In his personal deposition and as corporate representative of Properties and Builders Supply, McLarrin failed to identify any negligence by Prewett.[2] [Doc. No. 182, Exh. A, McLarrin Depo., p. 190, lines 15-20; Exh. B, Properties Depo., p. 55, lines 8-19]. In his corporate deposition, McLarrin also failed to identify any negligence by Hulcher. [Doc. No. 223, Exh. 1, Properties Depo., p. 116, lines 6-25].

Additionally, Prewett points to the testimony of the other employees or former employees of Properties and/or Builders Supply who were identified as witnesses: Linda McLarrin, Susan McLarrin, Christopher Randle McLarrin, Alex Avila, Harold Clayton Hale, Sam Harris, Danny Parker, and Ricky Sawyer, Sr. All of the witnesses were deposed, and none identified a negligent act or omission by Prewett. [Doc. No. 182, Exh. D].

Properties and Builders Supply have not identified any expert in the industry who will testify as to the standard of care and any brief thereof.

Finally, the Prewett, Hulcher, and Union Pacific employees who were key to the cleanup have testified that there was no negligent or improper act. During cleanup, Robert Griffin ("Griffin"), the corporate representative of Prewett, was on site daily. He received instructions from Vincent Truxclair ("Truxclair") of Union Pacific. Truxclair explained that Hulcher was at the site for

---

[2]In the deposition testimony cited in this Ruling, Prewett is sometimes referred to as "B & P Enterprises."

approximately 36 to 48 hours using heavy equipment to move cars from the derailment location onto property east of the track. [Doc. No. 223, Exh. 1, Truxclair Depo., pp. 86-87, 90]. Hulcher also placed locomotives back on the track for transport to the location where they would be repaired. *Id.* Hulcher employees, primarily Billy Brown, were directed by Jason Culp ("Culp"), Union Pacific's Director of Mechanical Maintenance and Truxclair's supervisor. *Id.* at p. 88. Truxclair testified that Hulcher performed tasks necessary to the cleanup and that he was unaware of any negligent act or failure to follow Union Pacific directives.[3] *Id.* at pp. 90-92.

Likewise, neither Truxclair, Griffin, nor Culp was aware of any negligent or improper act or any directive that Prewett failed to follow. [Doc. No. 182, Exh. K, Truxclair Depo., pp. 77-78; Exh. I, Culp Dep., p. 88].

Before Prewett left the site,[4] Reid Carlisle and Brent Smith, employees of Union Pacific's Risk Management Department, met with Griffin. [Doc. No. 182, Exh. F, Carlisle Depo., pp. 112-114]. They then met with McLarrin and his son to discuss the work that was performed. Neither Carlisle nor Smith was aware of any negligent acts attributable to Prewett. *Id.* at p. 135; Doc. No. 182, Exh. J, Smith Depo., p. 46].

Properties and Builders Supply responded to Prewett's and Hulcher's opposition and sur-reply memoranda. They offer no evidence or argument to support a negligence cause of action.[5]

---

[3]Culp also allegedly testified to these facts, and Hulcher cites to his deposition testimony at pages 91-92. However, those pages are not attached to the memorandum. *See [*Doc. No. 223, Exh. 3, Culp Depo.]

[4]Hulcher left the site before Prewett.

[5]Properties and Builders Supply filed an *in globo* response, but the Court's analysis in this Ruling is limited to the negligence claims.

7

Instead, they argue that Prewett and Hulcher are liable because they entered the Church Street Land without permission, destroyed buildings and trees, hauled rocks, soil, and debris in and out, and then left piles of rocks on the property in an effort to be expedient. They then argue that Prewett's and Hulcher's actions were intentional and thus they are solidary obligors under Article 2324 along with Union Pacific. Even in their sur-reply section ostensibly responding to the claim that they have "*No Evidence of Negligence*," [Doc. No. 284, p. 5], Properties and Builders Supply do not address negligence in any way. Instead, they again argue that Prewett and Hulcher "took over private property for corporate profit and destroyed that property" because it was "expedient," and they are not "entitled to immunity simply because they listened to Union Pacific."[6] *Id.*

First, the Court has previously determined that Builders Supply did not have a valid lease of the Church Street Land. [Doc. No. 288]. Therefore, to the extent that Builders Supply seeks to recover for damages to the Church Street Land based on Prewett's and Hulcher's negligence, they have no basis for their claim. Further, based on the record, evidence, and arguments presented, the Court finds that Properties and Builders Supply have failed to present evidence or argument on the standard of care applicable to Prewett and Hulcher, or to show that Prewett or Hulcher breached any such standard of care. Accordingly, they have failed to raise a genuine issue of material fact for trial on their negligence claims. However, Properties and Builders Supply have raised trespass and/or

---

[6]Properties and Builders Supply then attempt to analogize Prewett's and Hulcher's actions to "someone breaking into this Courthouse, destroying all the furniture in the Courtroom, and then claiming innocence because someone else told them it was okay to do that." [Doc. No. 284, p. 5]. That suggested scenario has no bearing on the analysis of the actual claims in this case.

8

intentional tort claims,[7] which are the subject of other pending motions for summary judgment. To that extent, the Court finds that there are genuine issue of material fact as to whether Properties and Builders Supply may have remaining claims for damages against Prewett and Hulcher.

III. CONCLUSION

For the foregoing reasons, the motions for summary judgment on the issue of negligence [Doc. Nos. 182 & 187] filed by Prewett and Hulcher are GRANTED IN PART AND DENIED IN PART. To the extent that Prewett and Hulcher move for summary judgment on Properties' and Builders Supply's negligence claims, the motion is GRANTED, and those claims are DISMISSED WITH PREJUDICE. To the extent that Prewett and Hulcher move the Court for a finding that they have no liability for damages to Properties and Builders Supply, the motion is DENIED, subject to the Court's consideration of the other pending motions and arguments in this matter.

MONROE, LOUISIANA, this 20th day of April, 2017.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[7] Without prejudging the pending motions, it would appear that any claim for trespass belongs to Properties, not Builders Supply. However, the Court has determined that Builders Supply may proceed with the claim for damages to cross ties stored on the Church Street Land with Properties' permission. The Court will consider Builders Supply's one remaining claim in the context of the other pending motions.

9