# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY** | **CIVIL ACTION NO. 15-0074** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **TAYLOR TRUCK LINE, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**--(consolidated with)--**

| | |
|---|---|
| **R & L BUILDERS SUPPLY, INC., ET AL.** | **CIVIL ACTION NO. 15-2460** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **UNION PACIFIC RAILROAD COMPANY, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court are motions for partial summary judgment on the issue of trespass [Doc. Nos. 183, 193 & 204] filed by Prewett Enterprises, Inc. ("Prewett"), Hulcher Services, Inc. ("Hulcher"), and Union Pacific Railroad Co. ("Union Pacific"). Prewett, Hulcher, and Union Pacific move the Court for summary judgment on any trespass claims asserted by R & L Properties of Oak Grove, LLC ("Properties") and/or R & L Builders Supply, Inc. ("Builders Supply").

For the following reasons, the motions for summary judgment are GRANTED IN PART and DENIED IN PART.

## I.  FACTS AND PROCEDURAL HISTORY

On October 5, 2014, a collision occurred in Mer Rouge, Louisiana, when a Union Pacific train collided with a 2013 Kenworth tractor with trailer and dolly (hereinafter "tractor trailer") which had become lodged on the highway/railway grade crossing when the driver, Daniel Shackleford,

attempted to cross.[1]  The tractor trailer was owned by College City Leasing, LLC ("College City") and leased to Taylor Truck Lines, Inc. ("Taylor Truck").

As a result of the collision, approximately 17 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property.  Properties owns the land located along Church Street in Mer Rouge[2] ("the Church Street Land") where at least some of the cars and other debris came to rest after the collision.  Builders Supply operates a building supply and equipment facility on Andrews Lane in Mer Rouge.

Union Pacific owns a right-of-way adjacent to the railroad that is seventy-five feet in width and thirty-seven and one-half feet on either side of the center line of the track. [Doc. Nos. 183-2 & 183-3].  The right-of-way runs adjacent to the Church Street Land.  It also extended up to and through Davenport Avenue to the west of the collision scene[3] and to Bountz Lane to the east.

On January 14, 2015, Union Pacific brought the instant suit against Shackleford, and the entities that otherwise owned, leased, or had another interest in the tractor trailer, Taylor Truck,

---

[1]The facts surrounding the collision are set forth more fully in the Court's previous rulings in this matter.

[2]The legal description of the land is as follows:

Lots 1 through 12, Block 23 inclusive of the T.H.B. Andrews Addition to Mer Rouge, Louisiana, as per plat thereof recorded in the Office of the Clerk of Court of Morehouse Parish, Louisiana, LESS AND EXCEPT the North 75 feet of Lots 10, 11, and 12, the North 75 feet of the East 5 feet of Lot 9, and the North 30 feet of Lots 7, 8 and 9 of said Block 23.

[3]Union Pacific characterizes this differently: it admits that "it is the owner of a servitude over which Davenport Avenue [also called Hwy. 138 or 425] has been constructed." [Doc. No. 183-6, p. 2].

Taylor Logistics, Inc., and College City.[4]  On November 4, 2015, a lawsuit filed by Properties and Builders Supply was consolidated with this lawsuit.

Approximately one year before the accident, Properties purchased the Church Street Land for the purpose of expanding Builders Supply's business operations.  Prior to and at the time of the accident, Builders Supply was storing used cross ties on the Land.

On February 27, 2017, the Court issued a Ruling and Judgment [Doc. Nos. 287 & 288], finding that there was no valid lease of the Church Street Land from Properties to Builders Supply and dismissing any claims asserted by Builders Supply for damage to the Church Street Land.  The Court allowed Builders Supply to proceed with any claims for damages to cross ties it had stored on the Church Street Land with Properties' permission.

In the instant motions, Union Pacific and its contractors, Prewett and Hulcher, move for summary judgment on the trespass claims asserted by Properties and Builders Supply.  The motions have been fully briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The

_____

[4]Union Pacific, Builders Supply, and Properties all later amended to assert claims against the Robert G. Taylor Irrevocable Trust and against Robert G. Taylor, individually and as trustee of the Robert G. Taylor Irrevocable Trust.  Those claims have since been dismissed either with or without prejudice and are no longer pending in this Court.

3

moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

## B.     Trespass

The tort of trespass under Louisiana law requires a showing of an "unlawful physical invasion of the property or possession of another." *Dickie's Sportsman's Ctrs., Inc. v. Dep't of Transp. & Dev.*, 477 So.2d 744, 750-51 (La. App. 1st Cir. 1985). The plaintiff must also "establish a causal nexus between the encroachments on [the] property and the damage" claims. *Id.* at 751.

However, Union Pacific held a right-of-way which extended seventy-five feet in width and a distance of thirty-seven and one-half feet on either side of the center of the main line railroad track. The right-of-way granted to a public railroad is a "limited personal servitude" under Louisiana law. *Faulk v. Union Pac. R.R. Co.*, 2014-1598 (La. 6/30/15), 172 So. 3d 1034, 1046 (citing *Farrell v. Hodges Stock Yards, Inc.*, 343 So.2d 1364, 1371 (La. 1977); *Parkway Development Corporation v. City of Shreveport*, 342 So.2d at 153-54; *Board of Commissioners of Port of New Orleans v. Illinois Central Gulf Railroad Company*, 379 So.2d 838, 841 (La. App. 4 Cir.), *writ denied*, 380 So.2d 1210 (La. 1980)). "A 'limited personal servitude' is a 'real right' that confers on a person limited advantages of use or enjoyment over an immovable belonging to another person." *Faulk*, 172 So.2d

at 1046 (citing LA. CIV. CODE art. 639, 1976 Revision Comment (c)). "A servitude of this type is denominated by [article] 639 as a 'personal servitude of right of use.'" *Id.* (citing *Farrell*, 343 So.2d at 1371 n. 6).

The right-of-way or servitude is limited by article 745, which provides as follows:

> The owner of the dominant estate [Union Pacific] has the right to enter with his workmen and equipment into the part of the servient estate [Properties' Church Street Land] that is needed for the construction or repair of works required for the use and preservation of the servitude. He may deposit materials to be used for the works and the debris that may result, under the obligation of causing the least possible damage and of removing them as soon as possible.

LA. CIV. CODE art. 745. "An owner of a dominant estate may go upon a servient estate to make either original works or repairs, at his own expense, which are necessary to use and preservation of the servitude." *Dautreuil v. Degeyter*, No. 83-68 (La. App. 3 Cir. 6/29/83), 436 So.2d 614, 617. "There is no requirement that the owner of the dominant estate request permission from the owner of the servient estate to exercise these rights." *Jackson v. Jackson*, 2000-2591 (La. App. 1 Cir. 3/6/02), 818 So. 2d 192, 198. Thus, Union Pacific and contractors, Prewett and Hulcher, had the right to enter onto the Church Street Land without Properties' permission if necessary to repair the works required for the use and preservation of Union Pacific's servitude and to deposit their work materials and debris for that purpose, as long as they caused the least possible damage and removed the materials and debris as soon as possible.

Before addressing the substantive arguments, the Court must address any trespass claim asserted by Builders Supply. The Court has previously determined that Builders Supply did not have a valid lease from Properties of the Church Street Land. Thus, Builders Supply has no standing to assert a trespass claim against Prewett, Hulcher, and Union Pacific. Their motions for summary

judgment on Builders Supply's trespass claims are GRANTED, and those claims are DISMISSED WITH PREJUDICE.

Properties, as the owner of the Church Street Land, does have standing to assert trespass claims against Prewett, Hulcher, and Union Pacific. Prewett, Hulcher, and Union Pacific all move for summary judgment on Properties' trespass claims. They contend that they all had the authority under Union Pacific's right-of-way to enter the Church Street Land without permission of the landowner, limited only by the requirements of article 745. Properties has identified no expert who will offer an opinion that Prewett's, Hulcher's, and Union Pacific's activities did not comply with article 745's requirement that they cause the least possible damage and that they remove the materials and debris as soon as possible. Accordingly, Hulcher and Prewett contend that they are entitled to summary judgment on the trespass claims against them.

Properties contends that its principle did not give Prewett, Hulcher, and Union Pacific permission to enter onto the Church Street Land and that they did not otherwise have the authority to be on the Church Street Land or to conduct operations in the manner they did so. First, while Properties acknowledges Union Pacific's right-of-way, it argues that article 745 pertains only to the "*preservation of the servitude*." [Doc. No. 232, p. 19 (emphasis in original)]. According to Properties, Prewett's, Hulcher's, and Union Pacific's activities[5] "had nothing to do with maintaining [i.e. preservation of] the railroad right-of-way, but had everything to do with (a) getting the trains up and running (which was completed within 24 hours); and (b) then cleaning up the debris." [Doc. No. 232, pp,. 6-7]. Second, Properties argues that Prewett, Hulcher, and Union Pacific had no

---

[5]Although the Court refers specifically to Union Pacific, its "activities" are all through Prewett and Hulcher, who performed all cleanup and reclamation activities.

authority to enter the Church Street Land based on Union Pacific's right-of-way because they could have used the access from Davenport Avenue and Bountz Lane. Thus, Properties contends that there were no dominant and servient estates, rendering article 745 inapplicable. Third, Properties argues that Prewett, Hulcher, and Union Pacific acted improperly because only one or two of the railroad cars were on or near the Church Street Land as a result of the collision, and the rest were dragged there after the fact for reclamation activities. Fourth, Properties argues that the evidence shows that Prewett built a roadway in the middle of the Church Street Land when a "much less damaging location could have been chosen." [Doc. No. 232, p. 19].

The Court finds that Union Pacific, Prewett, and Hulcher did not commit an unlawful physical invasion of Properties' Church Street Land. They lawfully entered the Church Street Land by virtue of the Union Pacific right-of-way, to repair Union Pacific's right-of-way and remove the damaged train cars and debris. Whether two cars or more actually fell onto the Church Street Land immediately after the collision,[6] at least some of Union Pacific's property was on the Church Street Land as a result of the collision. Further, the Court does not accept Properties' extremely narrow reading of the article 745 that Union Pacific could only enter upon the Church Street Land to preserve its servitude. On its face, article 745 contemplates entry onto the subservient estate, not

---

[6]The investigating law enforcement officer who was present immediately after the collision testified that one locomotive came to rest on the Church Street Land. [Doc. No. 183-4, Sgt. Christopher Chun Depo., p. 39]. Joshua Prewett, corporate representative of Prewett, also testified that he was present at the beginning of the cleanup and reclamation effort and that "[t]here were some" train cars on the Church Street Land. [Doc. No. 232-4, Prewett Depo., p. 10]. Robert Griffin of Prewett also was on site prior to the moving of the train cars and testified that "some" train cars were on the Church Street Land, but "most" were not. [Doc. No. 232-6, Griffin Depo., p. 25]. At the corporate deposition of Hulcher, John Pinkston testified that "some" of the cars came to rest on the Church Street Land. [Doc. No. 284-3, Hulcher Corporate Depo., pp. 28-28].

only for the preservation of the servitude, but for the "repair of works required for the use" of the servitude. Use of the servitude had been interfered with or damaged by the collision, and Hulcher and Prewett, as contractors acting for the dominant estate, did not trespass onto the Church Street Land to recover train cars, locomotives, and other debris, as well as to repair the track or the actual servitude itself. To this extent, Prewett's, Hulcher's, and Union Pacific's motions for summary judgment are GRANTED.

Nevertheless, the Court's inquiry does not end with this finding. Properties further asserts that, even if Union Pacific, Prewett, and Hulcher were permitted to enter onto the Church Street Land, they failed to comply with the requirements of article 745. As Louisiana courts have pointed out, Prewett's, Hulcher's, and Union Pacific's entry onto the Church Street Land had to be necessary, their activities therein had to cause the least possible damage, and they had to remove the materials and debris as soon as possible. With regard to the necessity of entry, Properties argues that there were other points of access to railroad track and the damaged cars and debris. However, Robert Griffin, Prewett's employee, testified that access from somewhere other than the Church Street Land was not "feasible" because of the "deep ditches" and the trains running on the tracks (which were fixed by the next morning after the collision). [Doc. No. 284-2, Griffin Depo., p. 23]. Likewise, Jeffrey Prewett, the corporate representative for Prewett, testified that it was not possible to safely access the collision site and conduct repairs and reclamation because of the ditch and that it would have also been unsafe to fill in the ditch and then attempt to access from that area. [Doc. No. 232, Exh. D, Prewett Depo., pp. 17-18]. Properties has offered no testimony which rebuts the reasons offered by Robert Griffin and Jeffrey Prewett. Therefore, the Court finds that Union Pacific's, Hulcher's, and Prewett's entry onto the Church Street Land was "necessary." To this extent, Union

Pacific's, Prewett's, and Hulcher's motions for summary judgment are also GRANTED.

Next, there is the issue of whether the debris brought on the Church Street Land was removed as quickly as possible. Prewett and Hulcher have argued and presented evidence that they performed the derailment cleanup and reclamation activities within industry standards. Further, although not specific to this motion, the record shows that Hulcher was only on the Church Street Land between October 5, 2014 (the day after the collision) and October 7, 2014. [Doc. No. 182-16, John Randall Pinkston Aff.]. Prewett, which had greater responsibility for the cleanup work, was in Mer Rouge for cleanup for approximately two months. [Doc. No. 187-4 Robert Griffin Aff.]. However, Properties argues and presents evidence that the debris has **never** been removed. *See* [Doc. No. 232, p. 20; Doc. No 232-8, William Randle McLarrin Depo., p. 199; Doc. No. 232-5, Robert Griffin Depo., pp. 35-45]. Therefore, at this juncture, the Court finds a genuine issue of material fact for trial whether Union Pacific, Prewett, and Hulcher removed debris as quickly as possible, and, to this extent, their motions for summary judgment are DENIED.[7]

Finally, the Court turns to the remaining question: whether there is an issue of fact for trial whether Prewett, Hulcher, and Union Pacific caused the least amount of damage possible. Properties makes no specific allegations against Hulcher in its memorandum on this issue. With regard to Prewett, Properties claims that "Prewett determined that it was in its best interest to build a roadway in the *middle* of the [Church Street Land] in order to conduct the reclamation efforts" when a "much less damaging location could have been chosen" and that Prewett did so because it was "expedient"

---

[7]In its memorandum, Prewett (in an argument joined by Hulcher and Union Pacific) relies on the fact that Properties has no expert witness to rebut the testimony of the Defendant experts. However, the Court finds no requirement in the case law for expert testimony on this issue. Given the number of motions in this case, it is possible that the Court may need to revisit this issue, but, at this juncture, the Court finds there is a genuine issue of material fact for trial.

and "without regard to the damages to Properties." [Doc. No. 232, p. 19]. However, in its responses to Requests for Admission, Union Pacific denied that the roadway could have been placed along the edge of the Church Street Land, and Prewett and Hulcher acted at the direction of Union Pacific in accessing the Church Street Land and making the roadway. [Doc. No. 232-4, Prewett Depo., p. 15, Doc. No. 284-3, Hulcher Corporate Depo., p. 43]. In response, Properties cites no deposition, affidavit, or expert testimony, but provides only an unmarked aerial photograph of the site. This photograph does not raise a genuine issue of material fact for trial as to whether Prewett, Hulcher, and Union Pacific caused the least amount of damage based on the placement of the roadway. Accordingly, to this extent, Union Pacific's, Prewett's, and Hulcher's motions for summary judgment are GRANTED.

## III.    CONCLUSION

For the foregoing reasons, motions for partial summary judgment on the issue of trespass [Doc. Nos. 183, 193 & 204] filed by Prewett, Hulcher, and Union Pacific are GRANTED IN PART and DENIED IN PART. To the extent that they move for summary judgment on any trespass claim asserted by Builders Supply, the motions are GRANTED, and Builders Supply's trespass claims against these Defendants are DISMISSED WITH PREJUDICE. To the extent that they move for summary judgment on trespass claims asserted by Properties, the motions are GRANTED IN PART and DENIED IN PART. The Court finds that there is no genuine issue of material fact for trial that these Defendants entered the Church Street Land lawfully and that, under the requirements of article 745, they caused the least amount of damage. To this extent, the motions are GRANTED. However, the Court finds there is a genuine issue of material fact for trial whether they removed the debris as

quickly as possible.

MONROE, LOUISIANA, this 2nd day of May, 2017.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE