# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY** | **CIVIL ACTION NO. 15-0074** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **TAYLOR TRUCK LINE, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

--(consolidated with)--

| | |
|---|---|
| **R & L BUILDERS SUPPLY, INC., ET AL.** | **CIVIL ACTION NO. 15-2460** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **UNION PACIFIC RAILROAD COMPANY, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

# RULING

Pending before the Court are motions for partial summary judgment on the issue of environmental contamination [Doc. Nos. 186, 194, 198 & 206] filed by Prewett Enterprises, Inc. ("Prewett"), Hulcher Services, Inc. ("Hulcher"), College City Leasing, LLC ("College City"), Daniel Shackleford ("Shackleford"), Taylor Logistics, Inc. ("Taylor Logistics), Taylor Truck Line, LLC ("Taylor Truck"), Taylor Consolidated, Inc. ("Taylor Consolidated"),[1] and Union Pacific Railroad Co. ("Union Pacific"). These entities all move the Court for summary judgment on claims asserted by R & L Properties of Oak Grove, LLC ("Properties") and/or R & L Builders Supply, Inc.

---

[1] Taylor Consolidated is not listed as a movant in the motion for partial summary judgment [Doc. No. 198] filed by the other Taylor entities. However, in their reply memorandum [Doc. No. 246], Taylor Consolidated is listed as a movant. To the extent that environmental contamination claims are asserted against Taylor Consolidated, those claims are subject to dismissal for the same reasons set forth below, and the Court finds no prejudice to the non-movants by entry of judgment in its favor as well.

("Builders Supply") for environmental contamination to the land caused by the derailment or subsequent cleanup. Properties and Builders Supply do not oppose summary judgment on the environmental claims.

For the following reasons, the motions for partial summary judgment on the issue of environmental contamination are GRANTED.

I.   **FACTS AND PROCEDURAL HISTORY**

On October 5, 2014, a collision occurred in Mer Rouge, Louisiana, when a Union Pacific train collided with a 2013 Kenworth tractor with trailer and dolly ("tractor-trailer") which had become lodged on the highway/railway grade crossing when the driver, Shackleford, attempted to cross.[2] The tractor-trailer was owned by College City and leased to Taylor Truck.

As a result of the collision, approximately 17 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property. Properties owns the land located along Church Street in Mer Rouge[3] ("the Church Street Land") where at least some of the cars and other debris came to rest after the collision. The Church Street Land lies on the east side of the railroad tracks. Builders Supply operates a building supply and equipment facility on Andrews Lane in Mer Rouge. Approximately one year before the accident, Properties purchased the Church

---

[2]The facts surrounding the collision are set forth more fully in the Court's previous rulings in this matter.

[3]The legal description of the land is as follows:

Lots 1 through 12, Block 23 inclusive of the T.H.B. Andrews Addition to Mer Rouge, Louisiana, as per plat thereof recorded in the Office of the Clerk of Court of Morehouse Parish, Louisiana, LESS AND EXCEPT the North 75 feet of Lots 10, 11, and 12, the North 75 feet of the East 5 feet of Lot 9, and the North 30 feet of Lots 7, 8 and 9 of said Block 23.

2

Street Land for the purpose of expanding Builders Supply's business operations. Prior to and at the time of the collision, Builders Supply was storing used cross ties on the Land.

Following the collision, Union Pacific contracted with Prewett and Hulcher to perform reclamation and cleanup activities.

Additionally, the Louisiana Department of Environmental Quality ("LDEQ") was involved in the emergency response to the collision. LDEQ representative, Lance Beauvais ("Beauvais"), traveled to the site following the accident to determine what was displaced. As a precaution, LDEQ treats a site as if hazardous waste is present. [Doc. No. 186-5, Beauvais Depo., p. 9]. The LDEQ classifies "hazardous" as anything that poses an "immediate threat to human health or environment." *Id.* at p. 27. According to Beauvais, the following substances were released from the locomotives or railcars during the derailment or cleanup process: (1) argon gas, an inert gas which will displace oxygen and is classified as hazardous; (2) diesel fuel from the locomotives, which is not necessarily considered hazardous; (3) peanut oil, which is not hazardous;[4] and (4) PVC resin/powder product, which is not hazardous. *Id.* at pp. 14-17, 24-25.

When Beauvais arrived, argon gas was being released from one or two of the argon tank cars. *Id.* at p. 14. Beauvais was responsible for monitoring the argon release and ensuring that it was not displacing enough oxygen to be unsafe. *Id.* at p. 16. The argon stayed low to the ground until it warmed up and was safely vented into the atmosphere. *Id.* at pp. 15, 24-25. Beauvais is unaware of anyone who was harmed by the release of argon. *Id.* at p. 16.

Diesel was also leaking from one of the locomotives on the **west** side of the railroad tracks

---

[4] Peanut oil "actually enhances the soil" as it "stimulates microbial activity in the soil and technically richens the soil." [Doc. No. 186-6, Stephen Brown Depo., p. 56].

3

on Highway 165. *Id.* at p. 17. The diesel, as well as the peanut oil and PVC resin, were all removed by vacuum trucks, and the affected soil was excavated and hauled off site. *Id.* at pp. 24-25, 44.

Beauvais was on site for five (5) days following the collision and derailment. During that time, he inspected the Church Street Land. According to Beauvais, any materials that spilled on the Church Street Land were removed. *Id.* at pp. 35-36, 38-39.

On January 14, 2015, Union Pacific brought the instant suit against Shackleford, and the entities that otherwise owned, leased, or had another interest in the tractor trailer, Taylor Truck, Taylor Logistics, Inc., and College City.[5]

In June 2015, Stephen Brown ("Brown") of the LDEQ Underground Storage Tank and Remediation Division became involved in the remediation efforts because of concerns about the residual presence of diesel on the west side of the railroad tracks. He reviewed the remediation work plan of Union Pacific's contractor, GHD Services, Inc. ("GHD") and tested both the west side of the railroad tracks, where the concern arose, and the east side, where the Church Street Land is located. Tests were conducted on June 24 and 25, 2015. The testing confirmed that no harmful level of diesel was on the Land, and Brown did not see any residual PVC product or see or smell any residual peanut oil during the June 2015 site investigation of the Land. [Doc. No. 186-6, Brown Depo, pp. 48, 49, 55]. While contamination was found on the Church Street Land, the LDEQ did "not feel that it has anything to do with the derailment whatsoever." *Id.* at 54. Brown explained the results as follows:

---

[5]Union Pacific, Builders Supply, and Properties all later amended to assert claims against the Robert G. Taylor Irrevocable Trust and against Robert G. Taylor, individually and as trustee of the Robert G. Taylor Irrevocable Trust. Those claims have since been dismissed either with or without prejudice and are no longer pending in this Court.

4

> [T]he interesting thing in short was that there was no indication of any diesel residuals on the [Church Street Land]; however, TMW-2 [one of the sample locations] produced PAH-class compounds, also called semi-volatile compounds, which are associated with the creosote process, and TMW-2 just happened to be located right beside one of these big piles of old, aging railroad ties. And it was both the consultant's [GHD's] conclusion and the [LDEQ's] concurrence that those hits, if you will, of several PAH compounds were not associated with the derailment but, rather, associated with the decomposing railroad ties on site . . . namely the breakdown of creosote compounds.

*Id.* at p. 40. Additionally, Brown testified that the contaminant found in the land would not have been the result of cross ties only on the property since October 5, 2014 (the derailment date) because of the length of time it takes for PAHs to appear in the soil. *Id.* at p. 41.

In depositions, GHD experts, environmental toxicologist, Troy Bernal ("Bernal"), and environmental scientist, Nathan Judice ("Judice"), also confirmed the results of the tests. [Doc. No. 186-7 Bernal Depo., pp. 59-62; Doc. No. 186-8, Judice Depo., pp. 40-43]. Bernal further testified that the June 2015 tests did not show the presence of insulation from railcars or contamination from the use of torches to cut up rail cars. [Doc. No. 186-7, pp. 92-93]. Judice also confirmed that the LDEQ did not recommend further action on the Church Street Land because there was nothing caused by the accident remaining, only PAHs caused by creosote ties. [Doc. No. 186-8, pp. 48-50]. Judice testified that he was present during the week following the derailment and did not see any cross ties placed on the pre-existing pile, he noted that vegetation was growing around the cross ties, and there were no markings indicating that the cross ties belonged to Union Pacific. *Id.* at pp. 42-43.

On November 4, 2015, a lawsuit filed by Properties and Builders Supply was consolidated with the original lawsuit.

On February 27, 2017, the Court issued a Ruling and Judgment [Doc. Nos. 287 & 288], finding that there was no valid lease of the Church Street Land from Properties to Builders Supply

5

and dismissing any claims asserted by Builders Supply for damage to the Church Street Land. The Court allowed Builders Supply to proceed with any claims for damages to cross ties it had stored on the Church Street Land with Properties' permission.

In the instant motions, Prewett, Hulcher, College City, Shackleford, Taylor Logistics, Taylor Truck, and Union Pacific move for summary judgment on the environmental claims asserted by Properties and Builders Supply. Properties and Builders Supply do not oppose summary judgment on this issue.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

Unless the moving party meets its initial burden, the Court may not grant a motion for

summary judgment, even if the motion is unopposed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). However, pursuant to Local Rule 56.2, since no party filed an opposition and statement of contested material facts with regard to the environmental claims, the moving parties' statements of uncontested material facts are deemed admitted for purposes of this motion. LR 56.2 ("All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.).

**B.    Environmental Claims**

The moving parties contend that there is no evidence that the Church Street Land was contaminated by the derailment and/or clean-up. The evidence shows that any contamination to the Church Street Land was the result of cross ties already on the land prior to the derailment. Even if, as Properties and Builders Supply contend, Union Pacific placed some cross ties on the existing pile after the derailment, the moving parties argue that there is no evidence that these additional cross ties caused the elevated PAH levels. Properties and Builders Supply do not oppose summary judgment. They admit that later placed cross ties would only amount to hundreds of cross ties out of thousands on the Church Street Land, and their experts have obtained clarification that the earlier noted chemical levels did not exceed EPA limits.[6]

First, the Court has previously determined that Builders Supply did not have a valid lease from Properties of the Church Street Land. Thus, Builders Supply has no standing to assert an environmental contamination claim. The motions for partial summary judgment on Builders Supply's environmental contamination claims are GRANTED, and those claims are DISMISSED

---

[6]The Court expresses no opinion as to whether the Church Street Land is in compliance with applicable state and federal environmental laws, but merely recounts Properties and Builders Supply's arguments herein.

7

WITH PREJUDICE.

Properties, as the owner of the Church Street Land, does have standing to assert environmental contamination claims. However, based on the undisputed material facts, the Court finds that Properties has insufficient evidence to support its environmental contamination claims. Accordingly, the motions for partial summary judgment on Properties' environmental contamination claims are also GRANTED.

**III. CONCLUSION**

For the foregoing reasons, motions for partial summary judgment on the issue of environmental contamination [Doc. Nos. 186, 194, 198 & 206] filed by Prewett, Hulcher, College City, Shackleford, Taylor Logistics, Taylor Truck, Taylor Consolidated, and Union Pacific are GRANTED. Properties' and Builders Supply's environmental contamination claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 9th day of May, 2017.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE