UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY** | **CIVIL ACTION NO. 15-0074** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **TAYLOR TRUCK LINE, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

--(consolidated with)--

| | |
|---|---|
| **R & L BUILDERS SUPPLY, INC., ET AL.** | **CIVIL ACTION NO. 15-2460** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **UNION PACIFIC RAILROAD COMPANY, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

RULING

Pending before the Court is a Motion for Partial Summary Judgment on the Issue of Preemption of Liability for Additional Signs or Signalization at the Crossing [Doc. No. 190] filed by Union Pacific Railroad Co. ("Union Pacific"). For the following reasons, the Motion for Partial Summary Judgment is GRANTED.

I.    FACTS AND PROCEDURAL HISTORY

On October 5, 2014, Daniel Shackleford ("Shackleford") was operating a 2013 Kenworth tractor with trailer and dolly (hereinafter "tractor-trailer") loaded with a Freuhoff Terex RT-780 crane. He was en route to deliver the crane to a construction company in Mississippi. The tractor-trailer driven by Shackleford was owned by College City Leasing, LLC ("College City"), but leased to Taylor Truck Lines, Inc. ("Taylor Truck"). Taylor Logistics, Inc. ("Taylor Logistics") was the

shipment broker.[1]

At approximately 1:00 p.m., Shackleford was driving the tractor-trailer south on U.S. Highway 165 in Mer Rouge, Louisiana. At the intersection of 165 and U.S. Highway 425/La. Highway 2, Shackleford stopped at the stop sign and then turned left onto U.S. Highway 425/La. Highway 2, also known as Davenport Avenue. He then proceeded to the Highway 2/Davenport Avenue highway/railway grade crossing ("the Crossing") over a Union Pacific main line railroad track (identified as DOT crossing number 441-531N at railroad milepost 473.60). There are pavement markings, crossbuck signs, flashing lights, gates, and bells at the Crossing. Flashing lights were installed in 1948 pursuant to a federal aid project and by use of federal funds.[2] During 1978, 1979, and 1980 cantilever flashing light signals were installed pursuant to a federal aid project and by use of federal funds.[3] The automatic flashing light signals with gates were installed during 1996 and 1997 pursuant to a federal aid project and by use of federal funds.[4] The Crossing is somewhat elevated and humped, but there is no low clearance warning sign. Shackleford was aware that a low

---

[1] Union Pacific also brought suit against Taylor Consolidated, Inc. Hereinafter the Court will refer to these parties collectively as the Taylor Entities.

[2] Flashing lights were installed at the Davenport Avenue crossing in 1948, pursuant to Federal Aid Project Number FAGM 190(3) and State Project Number 37-01-05, and the lights were financed by funds appropriated by the United States.

[3] Cantilever flashing light signals were installed at the Davenport Avenue crossing during 1978, 1979, and 1980, pursuant to Federal Aid Project Number RRS-48-01(004) and State Project Number 37-01-05. The July 9, 1980 final inspection was attended by a representative of the Federal Highway Administration, and July 14, 1980 Notice of Completion was sent by the Louisiana Department of Transportation to the Federal Highway Administration.

[4] Two automatic flashing light signals with gates were installed at the Davenport Avenue crossing in 1996 and 1997, pursuant to Federal Aid Project Number STP-48-01(006) and State Project Number 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. Federal funds in the amount of $106,477.81 were expended on the project.

clearance sign indicates the risk that a lowboy trailer may become high centered[5] or stuck on a crossing.

As Shackleford attempted to drive over the Crossing, the trailer became lodged, straddling the tracks. He exited the tractor to attempt to extricate the trailer, but did not notify law enforcement or Union Pacific.

According to Shackleford, approximately two minutes later, before he could extricate the tractor-trailer, a Union Pacific train traveling north on the track, which runs parallel to U.S. Highway 165/La. Highway 138, began to approach the Crossing. The train activated its flashing lights, bell, and crossing gate. At the time of the accident, Union Pacific engineer, Russell Rowe, was operating the lead locomotive, and Union Pacific conductor, James Kovalyshyn, was in the cab as well. When they saw the tractor-trailer at the Crossing, crew members applied the emergency brakes in an effort to avoid the collision. The crew members were unsuccessful, and the train collided with the trailer and attached crane. As a result of the collision, approximately 17 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property, including land owned by R & L Properties of Oak Grove, LLC.

On January 14, 2015, Plaintiff Union Pacific brought the instant suit against the Taylor Entities seeking to recover the property damage caused by the accident and derailment.

R & L Properties of Oak Grove, LLC ("Properties") and R & L Builders Supply, Inc. ("Builders Supply") had filed a separate lawsuit against the Taylor Entities, Union Pacific, and Union Pacific's contractors, Prewett Enterprises, Inc., and Hulcher Services, Inc., seeking to recover

---

[5]A tractor-trailer with a low clearance may become high centered if the underside of the trailer fails to clear the track.

their damages. On November 4, 2015, the Properties and Builders Supply lawsuit was consolidated with the Union Pacific lawsuit.

Although they have not made a claim against Union Pacific, as one of their defenses, the Taylor Entities contend that Union Pacific was comparatively negligent in failing to install a low clearance warning or post a flag man at the Crossing.

After discovery was complete, Union Pacific filed the instant motion, arguing that, based on preemption grounds, the Court should dismiss any claims or defenses that Union Pacific was negligent or at fault for allegedly inadequate warning devices at the Crossing. Union Pacific later supplemented its motion with an affidavit of David Peterson, a Union Pacific employee who has knowledge of the use of federal aids funds to install the warning devices at the Crossing.[6] [Doc. No. 220]. The Taylor Entities filed an opposition memorandum [Doc. No. 233] to Union Pacific's motion. Union Pacific filed a reply. [Doc. No. 250], and the Taylor Entities filed a sur-reply. [Doc. No. 262].

The Court is now prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment

---

[6]David Peterson ("Peterson") was the Manager of Industry and Public Projects in the Southern Region from 1992 to 1997. His territory during that time included the Louisiana Highway 2 (Davenport Avenue) crossing, also known as DOT No. 441-531N, in Mer Rouge, Louisiana. [Doc. No. 220, Exh. F]. Peterson attests that he has first-hand personal knowledge that a project was approved in 1996 to install new flashing lights, signals, and gates at this Crossing and that prior to the project the Crossing had lights, but no gates. He also attests that he has personal knowledge that federal aid funds were used in the project. *Id.*

is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

### B. Signs and Signals

Union Pacific asserts that it is entitled to summary judgment on any claims or defenses related to the signals and signs at the Crossing because such claims or defenses are preempted by federal law and thus barred.

The Supremacy Clause to the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const., ART. VI, CL.2. Congress has the power under the Supremacy Clause to preempt state law. Preemption may be express or implied.[7] *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

---

[7] In the area of implied preemption, the Supreme Court has recognized "field preemption where state law intrudes in an area that Congress has reserved for federal jurisdiction," and "conflict preemption, where enforcement of state law cannot be accomplished while simultaneously complying with federal law." *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001) (citing *English v. General Electric Co.*, 496 U.S. 72 (1990)). Only express preemption is at issue in this motion, as discussed *infra*.

The Federal Railway Safety Act ("FRSA") was enacted to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA contains an express preemption provision:

> (a) National uniformity of regulation.--(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order–
>
>> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
>>
>> (B) is not incompatible with a law, regulation, or order of the United States Government; and
>>
>> (C) does not unreasonably burden interstate commerce.
>
> (b) Clarification regarding State law causes of action.--(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party–
>
>> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>>
>> (B) has failed to comply with its own plan, rule, or

        standard that it created pursuant to a regulation or
        order issued by either of the Secretaries;[8] or

    (C) has failed to comply with a State law, regulation, or
      order that is not incompatible with subsection (a)(2).

  (2) This subsection shall apply to all pending State law causes of
    action arising from events or activities occurring on or after
    January 18, 2002.

(c) Jurisdiction.--Nothing in this section creates a Federal cause of action
   on behalf of an injured party or confers Federal question jurisdiction
   for such State law causes of action.

49 U.S.C. § 20106.

  Despite the express preemption provision, the United States Court of Appeals for the Fifth Circuit has found that "FRSA preemption is even more disfavored than preemption generally." *United Transp. Union v. Foster,* 205 F.3d 851, 860 (5th Cir. 2000) (citing *Rushing v. Kansas City*

---

[8]On August 3, 2007, Congress enacted the Implementing Regulations of the 9/11 Commission Act of 2007, Pub.L. 110-53, 121 Stat. 266, which among other actions, amended the preemption provision of 49 U.S.C. § 20106. This amendment did not change the previous preemption law, but clarified "that when a party alleges that a railway *failed to comply* with a federal standard of care established by regulation or with its own plan, rule or standard created pursuant to a federal regulation, preemption will not apply." *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1215 (10th Cir. 2008); *see also Grade v. BNSF Ry. Co.*, 676 F.3d 680, 684-85 (8th Cir. 2012); *Zimmerman v. Norfolk Southern Corp.*, 706 F.3d 177-78 (3d Cir. 2013). Thus, it is clear that a party may assert a cause of action for negligence against a railroad (1) for its failure to comply with a federal standard of care, if § 20106(b)(1)(A) applies; or (2) for its failure to comply with its own plan, rule, or standard created pursuant to a federal regulation, if § 20106(b)(1)(B) applies. *See Gauthier v. Union Pac. R.R. Co.*, 644 F. Supp. 2d 824, 835 (E.D. Tex. 2009) (citing *Van Buren v. Burlington Northern Santa Fe Ry. Co.*, 544 F.Supp.2d 867, 876 (D. Neb. 2008)). These two circumstances are not at issue in the present motion. To the extent that they may be applicable to Union Pacific's pending Motion for Summary Judgment on Liability [Doc. No. 209], the Court will consider those arguments separately.

*S. Ry. Co.*, 185 F.3d 496, 515 (5th Cir. 1999)).[9]

> The restrictive terms of its preemption provision "indicate[ ] that pre-emption will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (emphasis added). When applying FRSA preemption, the Court eschews broad categories such as "railroad safety," focusing instead on the **specific subject matter contained in the federal regulation**. *See id.* at 665-75, 113 S.Ct. 1732. In sum, when deciding whether the FRSA preempts state laws designed to improve railroad safety, we interpret the relevant federal regulations narrowly to ensure that the careful balance that Congress has struck between state and federal regulatory authority is not improperly disrupted in favor of the federal government.

*Id.* (emphasis added).

Under the FRSA, "the Secretary of Transportation shall maintain a coordinated effort to develop and carry out solutions to the railroad grade crossing problem . . . ." 42 U.S.C. § 20134(a); *see also Norfolk Southern Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000) (citing same). The Secretary of Transportation, through the Federal Highway Administration ("FHWA"), has promulgated regulations on grade crossing improvements which require "[a]ll traffic control devices proposed . . . [to] comply with the latest edition of the Manual on Uniform Traffic Control Devices for Streets and Highways supplemented to the extent applicable by State standards." 23 C.F.R. § 646.214(b)(1). The regulations further mandate that "adequate warning devices" for railroad crossings when "[f]ederal-aid funds participate in the installation of the devices are to include automatic gates with flashing lights" if certain identified conditions are met. 23 C.F.R. § 646.214(b)(3)(i). "For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA." 23 C.F.R.

---

[9] The 2007 Amendment operated as a clarification, and, thus, pre-2007 case law remains valid. *See Zimmerman*, 706 F.3d at 177.

§ 646.214(b)(4).

> The Supreme Court has held that where § 646.214(b)(3) and (4) . . . are applicable, state tort law is preempted. *Easterwood,* 507 U.S. at 670, 113 S.Ct. 1732. The *Easterwood* Court concluded that § 646.214(b)(3) and (4) displace state and private decision-making authority by establishing a federal law requirement that certain warning devices must be installed. *Id.* The crucial factor in determining whether § 646.214(b) is applicable, is whether federal funds participated in the installation of the warning devices at the crossing. "The fact that federal funds participated in the installation of the warning devices legally presupposes that the Secretary approved and authorized that expenditure, which in turn legally presupposes that the Secretary determined that the safety devices installed were adequate to their task."• *Hester v. CSX Transp. Inc.*, 61 F.3d 382, 387 (5th Cir. 1995). Once federal funds, and concomitantly federal approval, are given for a crossing's warning system the "'financing of the improvement project and its direction and control' are removed from the railroad, and claims against the railroad relating to the adequacy of the warnings are preempted." *Armijo v. Atchison, Topeka and Santa Fe Ry. Co.*, 87 F.3d 1188, 1190 (10th Cir.1996). . . . The Supreme Court, in *Norfolk S. Ry. Co. v. Shanklin*, declared that **it is the "displacement of state law concerning the devices' adequacy, and not the States' or the FHWA's adherence to the standard set out in § 646.214(b)(3) and (4) . . . that preempts state tort actions**." 529 U.S. 344, 357-58 . . (2000).

*Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 644-46 (5th Cir. 2005) (emphasis added).

In this case, the Crossing was equipped with railroad crossbuck signs, mast-mounted train-activated flashing lights with gates and bells, and cantilever-mounted train-activated flashing lights. Union Pacific presented undisputed evidence that federal funds were used in the installation of the mast mounted train-activated flashing lights with gates and bells, and cantilever mounted train-activated flashing lights, and these warning devices were in use at the time of the accident.[10] Thus, any state law claims based on the adequacy of the warnings at the Crossing appear to be preempted, as set forth in *Easterwood, Shanklin*, and their progeny.

---

[10]Although the Taylor Entities filed a statement of contested material facts [Doc. No. 233-1], they raise only legal arguments and issues and do not actually contest Union Pacific's Statement of Undisputed Facts [Doc. No. 190-4].

However, the Taylor Entities argue that the cited federal regulation, 23 C.F.R. § 646.214, pertains to devices warning the public of the presence of railroad grade crossings, while Union Pacific was aware of and failed to warn the public of a particular known hazard at the Crossing, and, therefore, their claim is not preempted. Because of this particular known hazard, the Taylor Entities contend that Union Pacific breached its duty to install a low ground clearance warning sign and/or place a flag man to notify persons of the hump at the Crossing. The Taylor Entities argue further that, even if federal law preempts claims for damages based on inadequate warning signs, they are not preempted from raising defenses based on the comparative negligence and fault of Union Pacific.

The Court disagrees. Despite the characterization of their arguments, the Taylor Entities raise a state law negligence claim based on Union Pacific's alleged failure to provide adequate warnings at the Crossing. It is clear that, when federal funds are used to install warning devices at a railroad crossing, the federal government defines what warning devices (whether active, passive, or both)[11] are adequate and completely preempts state law in this matter on the subject matter of warnings.

---

[11]Title 23, Code of Federal Regulations Section 646.204 defines active and passive warning devices:

> Active warning devices means those traffic control devices activated by the approach or presence of a train, such as flashing light signals, automatic gates and similar devices, as well as manually operated devices and crossing watchmen, all of which display to motorists positive warning of the approach or presence of a train.
>
> . . .
>
> Passive warning devices means those types of traffic control devices, including signs, markings and other devices, located at or in advance of grade crossings to indicate the presence of a crossing but which do not change aspect upon the approach or presence of a train.

*Shanklin*, 529 U.S. at 357. While the Court understands the distinction that the Taylor Entities make between the type of warnings–warning of the "presence" of an approaching train versus a warning of a particular condition at the crossing--the Court finds no such distinction in the law.[12] The purpose of the FRSA is "to promote safety in every area of railroad operations and to reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The Secretary of Transportation issued the regulation at issue to specifically address the warnings at railroad crossings, thereby serving the goal of preventing accidents. One of the very warning signs that may be installed under the applicable manual is the one the Taylor Entities argue should have been at the Crossing: a low clearance warning. *See* Manual on Uniform Traffic Control Devices, Section 8B.06 (including a "Low Ground Clearance" sign as one of the grade crossing advance warning signs.).[13] While

---

[12]The Court found only one case in the Southern District of Texas discussing this precise issue. *See Davis & Davis Heavy Haul Transp., Inc. v. Union Pacific R.R. Co.*, Civil Action No. B:12-212, 2015 WL 12768697 (S.D. Tex. Oct. 2, 2015). In that case, the parties had consented to trial before Magistrate Judge Ronald G. Morgan. Civil Action No. B:12-212 [Doc. Nos. 27 & 28]. In ruling on Motion for Partial Summary Judgment Regarding Warning Signs, Magistrate Judge Morgan concluded that the plaintiff's claim of negligence based on Union Pacific's failure to post a low clearance warning was preempted. 2015 WL 12768697 at *10-11 ("Because Davis's claims regarding signage are preempted – and do not fit into either exemption – Union Pacific is entitled to summary judgment as to any claim that they were negligent for failing to erect adequate warning signs.").

[13]Section 8B.23 provides, in pertinent part:

> If the highway profile conditions are sufficiently abrupt to create a hang-up situation for long wheelbase vehicles or for trailers with low ground clearance, the Low Ground Clearance Grade Crossing (W10-5) sign (see Figure 8B-4) should be installed in advance of the grade crossing.

Manual on Uniform Traffic Control Devices, Section 8B.23. Section B.23 provides further that "[b]ecause this symbol might not be readily recognizable by the public, the Low Ground Clearance Grade Crossing (W10-5) warning sign shall be accompanied by an educational plaque, LOW GROUND CLEARANCE. The LOW GROUND CLEARANCE education plaque shall remain in place for at least 3 years after the initial installation of the W10-5 sign (see Section

Louisiana was free to "revisit[ ] the adequacy of devices installed using federal funds" and use its own funds to "install more protective devices," *Shanklin*, 529 U.S. at 357-58, neither the State nor a railroad therein can be held liable for failing to act to revisit the signs when the federal government has deemed the warnings adequate.[14] *Id.* Likewise, if the warnings are adequate by virtue of federal law, then the argument that Union Pacific was negligent for failing to place a flag man at the Crossing is also preempted. *See Grade v. BNSF Ry. Co.*, 676 F.3d 680, 683 (8th Cir. 2012).

Further, there are two exceptions to the express preemption provision, but neither applies. First, one exemption, recognized by the Supreme Court in *Easterwood*, regards the "duty to slow or stop . . . to avoid a specific, individual hazard."[15] 507 U.S. at 676 n.5. This exemption is clearly inapplicable to the arguments in this motion.

Second, there is a statutory local safety or security hazard exception, which is also inapplicable.[16] *See* 49 U.S.C. § 20106(a)(2)(A); *Hesling*, 396 F.3d at 640; *Easterwood*, 507 U.S. at

2A.12)." *Id.*

---

[14]Indeed, *Shanklin* provides that "[w]hether the state should have originally installed different or additional devices, or whether conditions at the crossing have changed such that automatic gates and flashing lights would be appropriate, is immaterial to the preemption question." 529 U.S. at 358. In other words, even if the signal does not currently comply with § 646.214(b)(3), preemption still applies.

[15]"It has been consistently emphasized that the kinds of conditions that could constitute a 'specific individual hazard' are limited to transient conditions that could lead to an imminent collision, such as a child standing on the railway or a motorist stranded on a crossing or improperly parked tank cars which obstruct the view of the train engineer." *Baker v. Canadian Nat'l/Illinois Cent. Ry. Co.*, 397 F. Supp. 2d 803, 813 (S.D. Miss. 2005). The Court is aware that the speed of the Union Pacific train is at issue in other pending motions and expresses no opinion as to those issues at this time.

[16]The Court would note that its review of the case law indicates that the two exceptions are sometimes conflated, but regardless of whether considered as a specific, individual hazard or as a local hazard, the Taylor Entities have failed to show that an exception is applicable. As the

675 n.15. The § 20106(a)(2) savings clause "allows states to adopt additional or more stringent state regulation[s] related to railroad safety to prevent a local hazard, but only if the state law is not incompatible with federal regulation and does not burden interstate commerce." *Hesling*, 396 F.3d at 640 (citing 49 U.S.C. § 20106; *Easterwood*, 507 U.S. at 662). The savings clause is to be "narrowly construed." *Id.* (citing *Easterwood* v. CSX *Transp., Inc.*, 933 F.3d 1548, 1553 n.3 (11th Cir. 1991) (citing H.R. REP. NO. 1194 (1970), reprinted in 1970 U.S.C.A.A.N. 4104, 4117)). However, the Taylor Entities have failed to point to any state law, regulation, or order related to railroad safety or security which is applicable to their argument, but instead they rely only on the general law of negligence and comparative fault which do not appear to be encompassed by the

---

Southern District of Mississippi explained:

> While some courts have regarded the "essentially local safety hazard" exception in the savings clause of 49 U.S.C. § 20106 and the "specific individual hazard" exception recognized by the Court in *Easterwood* as synonymous and have used the terms interchangeably, *see, e.g., Gunn v. Atchison, Topeka and Santa Fe Ry. Co.*, 13 S.W.3d 52, 54 (Tex. Ct. App. 1999) (stating that "specific individual hazard" wording . . . was used by the *Easterwood* court as a substitute for the statutory "an excessively local safety hazard"), others have recognized these exceptions as distinct, *see, e.g., Stevenson v. Union Pacific R. Co.*, 110 F.Supp.2d 1086, 1088-1089 (E.D. Ark. 2000) ("A 'specific, individual hazard' is not to be confused with the statutory 'essentially local safety hazard' set forth in 49 U.S.C. § 20106."); *Hightower v. Kansas City Southern Ry. Co.*, 70 P.3d 835, 846-47 (Okla.2003) (noting distinction). In this court's view, the Supreme Court's reference to an exception for specific, individual hazards clarified that in addition to, or as a facet of a state's right to regulate as to essentially local safety hazards, federal regulations do not diminish the train crew's duty to exercise reasonable care to slow or stop the train to avoid an imminent collision.

*Baker*, 397 F. Supp. 2d at 814. This Court, however, attaches significance to the plain language of the statutory exception which requires action by the State in the form of a law or regulation, whereas, with regard to the *Easterwood* exception, it may be that the law on negligence imposes the only general duty required for application of the exception, assuming the other requirements are met.

13

exception.  Further, the local-condition savings clause does not apply where a condition is statewide in character or is capable of being adequately addressed in the national standards created by the Secretary of Transportation.[17]  In this case, An elevation or hump at a grade crossing is a common occurrence and cannot be characterized as a local hazard.  At any rate, the condition was capable of being adequately addressed by the warnings available in the Manual on Uniform Traffic Control Devices and/or state law.  Accordingly, no local safety or security hazard exception applies.

Finally, the Taylor Entities argue that they should be permitted to raise Union Pacific's comparative negligence as a defense, even if any claims for damages are preempted.  Otherwise, they argue that Union Pacific will receive a windfall of actually recovering damages from the Taylor Entities when it should have posted a low clearance warning sign.  However, when federal preemption acts to "subsume" the subject matter–in this case, the applicable warnings–no further inquiry is made into the adequacy of the warnings, which is exactly what the Taylor Entities propose to do.  Neither the Taylor Entities nor any other party may raise Union Pacific's comparative negligence in failing to post a low clearance sign or a flag man at the Hwy. 2/Davenport Avenue as a defense to claims against them.

---

[17]The House Report on the Railroad Safety Act of 1970, states in pertinent part:

The States will retain authority to regulate individual local problems or reduce essentially local railroad safety hazards. Since these local hazards would not be Statewide in character, there is no intent to permit a State to establish Statewide standards superimposed on national standards covering same subject matter.

H.R.REP. NO. 1194, 91st Cong., 2d Sess., reprinted in 1970 U.S.S.C.A.A.N. 4104, 4117.

### III.     CONCLUSION

For the foregoing reasons, Union Pacific's Motion for Partial Summary Judgment on the Issue of Preemption of Liability for Additional Signs or Signalization at the Crossing [Doc. No. 190] is GRANTED. The Taylor Entities and any other opposing parties are precluded from presenting testimony or arguing to the jury in support of a claim that Union Pacific was negligent or at fault for failing to provide additional signs or signals at the Crossing.

MONROE, LOUISIANA, this 13th day of July, 2017.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE