# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY** | **CIVIL ACTION NO. 15-0074** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **TAYLOR TRUCK LINE, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

--(consolidated with)--

| | |
|---|---|
| **R & L BUILDERS SUPPLY, INC., ET AL.** | **CIVIL ACTION NO. 15-2460** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **UNION PACIFIC RAILROAD COMPANY, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court is a Motion for Partial Summary Judgment Regarding Speed [Doc. No. 191] filed by Union Pacific Railroad Co. ("Union Pacific"). Defendants Daniel Shackleford ("Shackleford"), College City Leasing, LLC ("College City"), Taylor Truck Lines, Inc. ("Taylor Truck"), Taylor Logistics, Inc. ("Taylor Logistics"), and Taylor Consolidated, Inc. (collectively, "the Taylor Entities") oppose the motion. [Doc. No. 235]. Union Pacific filed a reply. [Doc. No. 249].

For the following reasons, the Motion for Partial Summary Judgment is GRANTED.

## I. FACTS AND PROCEDURAL HISTORY

On October 5, 2014, Shackleford was operating a 2013 Kenworth tractor with trailer and dolly (hereinafter "tractor-trailer") loaded with a Freuhoff Terex RT-780 crane. He was en route to deliver the crane to a construction company in Mississippi. The tractor-trailer driven by Shackleford

was owned by College City, but leased to Taylor Truck. Taylor Logistics was the shipment broker.[1]

At approximately 1:00 p.m., Shackleford was driving the tractor-trailer south on U.S. Highway 165 in Mer Rouge, Louisiana. At the intersection of 165 and U.S. Highway 425/La. Highway 2, Shackleford stopped at the stop sign and then turned left onto U.S. Highway 425/La. Highway 2, also known as Davenport Avenue. He then proceeded to the Highway 2/Davenport Avenue highway/railway grade crossing ("the Crossing") over a Union Pacific main line railroad track (identified as DOT crossing number 441-531N at railroad milepost 473.60). The elevated Crossing has pavement markings, crossbuck signs, flashing lights, gates, and bells.

As Shackleford attempted to drive over the Crossing, the trailer became lodged, straddling the tracks. He exited the tractor to attempt to extricate the trailer, but did not notify law enforcement or Union Pacific.

There are federal speed regulations in effect with regard to the Crossing, the type of track, and the type of train operated by Union Pacific. The Crossing is located at milepost 473.6, which is part of the McGehee Subdivision. The Union Pacific North Little Rock Timetable Number 5 was in effect at that time and governed the McGehee Subdivision. The track was graded Class 4. According to federal regulations, the maximum authorized speed for freight trains was sixty miles per hour, the same speed limit under Union Pacific's Timetable No. 5. However, Union Pacific also had a Company System General Order Number 2, which provided that the speed for key trains was fifty miles per hour.

Before Shackleford could extricate the tractor-trailer, a Union Pacific train traveling north

---

[1] Union Pacific also brought suit against Taylor Consolidated, Inc. Hereinafter the Court will refer to these parties collectively as the Taylor Entities.

on the track began to approach the Crossing. Union Pacific engineer, Russell Rowe, was operating the lead locomotive, and Union Pacific conductor, James Kovalyshyn, was in the cab as well. The flashing lights, bell, and crossing gate were activated. When he saw the tractor-trailer, Rowe recalled that the train was traveling between forty-eight and fifty miles per hour. Kovalyshyn also testified that the train was traveling less than fifty miles per hour. When they realized that the tractor-trailer was stopped, crew members applied the emergency brakes in an effort to avoid the collision. The crew members were unsuccessful, and the train collided with the trailer and attached crane. As a result of the accident, approximately 17 or 18 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property, including land owned by R & L Properties of Oak Grove, LLC ("Properties").

On January 14, 2015, Union Pacific brought the instant suit against the Taylor Entities seeking to recover the property damage caused by the accident and derailment.

Properties and R & L Builders Supply, Inc. ("Builders Supply") had filed a separate lawsuit against the Taylor Entities, Union Pacific, and Union Pacific's contractors, Prewett Enterprises, Inc., and Hulcher Services, Inc., seeking to recover their damages. On November 4, 2015, the Properties and Builders Supply lawsuit was consolidated with the Union Pacific lawsuit.

Although they have not made a claim against Union Pacific, as one of their defenses, the Taylor Entities contend that Union Pacific was comparatively negligent by failing "to follow applicable statutory, regulatory or legal standards" and because the train was "traveling at an excessive rate of speed." [Doc. Nos. 8, 81, 115].

After discovery was complete, Union Pacific filed the instant motion, arguing that federal preemption bars any claims or defenses that Union Pacific was negligent because of the speed of the

3

train . The motion is fully briefed [Doc. Nos. 235 & 249], and the Court is now prepared to rule.

II.     **LAW AND ANALYSIS**

    A.     **Standard of Review**

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

    B.     **Train Speed**

Union Pacific asserts that it is entitled to summary judgment on any claims or defenses related to the speed of the train or the timetable speed limit because such claims or defenses are preempted by federal law and thus barred.

    The Supremacy Clause to the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land." U.S. Const., ART. VI, CL.2. Congress has the power under the Supremacy Clause to preempt state law. Preemption may be express or

implied.[2] *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

The Federal Railway Safety Act ("FRSA") was enacted to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA contains an express preemption provision:

> (a) National uniformity of regulation.--(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.
>
> (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order–
>
> > (A) is necessary to eliminate or reduce an essentially local safety or security hazard;
> >
> > (B) is not incompatible with a law, regulation, or order of the United States Government; and
> >
> > (C) does not unreasonably burden interstate commerce.
>
> (b) Clarification regarding State law causes of action.--(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party–

---

[2] In the area of implied preemption, the Supreme Court has recognized "field preemption where state law intrudes in an area that Congress has reserved for federal jurisdiction," and "conflict preemption, where enforcement of state law cannot be accomplished while simultaneously complying with federal law." *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001) (citing *English v. General Electric Co.*, 496 U.S. 72 (1990)). Only express preemption is at issue in this motion, as discussed *infra*.

> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.
>
> (c) Jurisdiction.--Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

49 U.S.C. § 20106.

Despite the express preemption provision, the United States Court of Appeals for the Fifth Circuit has found that "FRSA preemption is even more disfavored than preemption generally." *United Transp. Union v. Foster,* 205 F.3d 851, 860 (5th Cir. 2000) (citing *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 515 (5th Cir. 1999)).

> The restrictive terms of its preemption provision "indicate[ ] that pre-emption will lie only if the federal regulations *substantially subsume* the subject matter of the relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (emphasis added). When applying FRSA preemption, the Court eschews broad categories such as "railroad safety," focusing instead on the **specific subject matter contained in the federal regulation**. *See id.* at 665-75, 113 S.Ct. 1732. In sum, when deciding whether the FRSA preempts state laws designed to improve railroad safety, we interpret the relevant federal regulations narrowly to ensure that the careful balance that Congress has struck between state and federal regulatory authority is not improperly disrupted in favor of the federal government.

*Id.* (emphasis added).

The current preemption provision is the result of Congress's enactment of the Implementing Regulations of the 9/11 Commission Act of 2007, Pub.L. 110-53, 121 Stat. 266. Among other actions, Congress clarified "that when a party alleges that a railway failed to comply with a federal standard of care established by regulation or with its own plan, rule or standard created pursuant to a federal regulation, preemption will not apply."[3] *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1215 (10th Cir. 2008); *see also Grade v. BNSF Ry. Co.*, 676 F.3d 680, 684-85 (8th Cir. 2012); *Zimmerman v. Norfolk Southern Corp.*, 706 F.3d 177-78 (3d Cir. 2013). Thus, even in the face of express preemption, Congress clarified that a party may assert a cause of action for negligence against a railroad (1) for its failure to comply with a federal standard of care, if § 20106(b)(1)(A) applies; or (2) for its failure to comply with its own plan, rule, or standard created pursuant to a federal regulation, if § 20106(b)(1)(B) applies. *See Gauthier v. Union Pac. R.R. Co.*, 644 F. Supp. 2d 824, 835 (E.D. Tex. 2009) (citing *Van Buren v. Burlington Northern Santa Fe Ry. Co.*, 544 F.Supp.2d 867, 876 (D. Neb. 2008)).

The FRSA directs that the Secretary of Transportation is to "prescribe regulations and issue orders for every area of railroad safety . . . ." 49 U.S.C. § 20103. This power is exercised largely through the Federal Railroad Administration ("FRA"). *See* 49 U.S.C. § 103; 49 C.F.R. § 1.88. The FRA has set "maximum operating speeds" at which trains can travel on different classes of tracks. *See* 49 C.F.R. § 213.9. The Crossing in this case was on a section of track rated as Class 4, which has a maximum operating speed of 60 miles per hour for freight trains. 49 C.F.R. § 213.9. The

---

[3]The 2007 amendment was a clarification, not a substantive amendment, so pre-2007 case law remains valid. *See Zimmerman*, 706 F.3d at 177.

Union Pacific timetable also provided that a freight train could operate at 60 miles per hour on the section where the Crossing is located.

The Supreme Court addressed train speed regulations in *CSX Transp. v. Easterwood*, 507 U.S. 658 (1993). Easterwood brought a wrongful death action against CSX, contending that CSX was negligent for operating the train at an excessive speed. Easterwood conceded that the train was traveling within the speed limit established by federal regulations issued pursuant to FRSA (less than 60 miles per hour), but she argued that CSX breached its duty to operate its train at a moderate and safe rate of speed. The Supreme Court held that § 213.9(a) "should be understood as covering the subject matter of train speed with respect to track conditions." *Id.* at 675 (citing to 49 C.F.R. § 213.9). Therefore, state negligence claims concerning train speed are preempted. *Id.* The *Easterwood* Court explained the regulations on "speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation. . . ." *Id.*

More recently, the Fifth Circuit followed the Supreme Court and held in *Hesling v. CSX Transp., Inc*. 396 F.3d 632, 638 (5th Cir. 2005), that because the CSX train was traveling under the authorized track speed, state negligence claims regarding excessive speed were preempted. In *Hesling*, the plaintiff argued that FRSA only intended to set *track* speed, but left the *train* speed to the discretion of the railroads, relying on statements in the Federal Register.[4] *Id.* at 637. The Fifth Circuit rejected Hesling's arguments. As Hesling pointed out, the railroad may "target what type of

---

[4]The applicable language provided that "'Notwithstanding some of the language in *Easterwood* that a cursory reading may otherwise indicate, FRA has never assumed the task of setting train speed. Rather, the agency holds railroads responsible for minimizing the risk of derailment by properly maintaining track for the speed they set themselves.'" *Hesling*, 396 F.3d at 637 (quoting *Track Safety Standards*, 63 Fed. Reg. 33,992, 33,999 (June 22, 1998) (codified at 49 C.F.R. pt. 213)).

8

track designations they want to maintain," but this fact does not allow them to "ignore federal regulations in setting their own train speeds"; "rather, they have the information and ability to tailor their operations to the particular track designations they desire, and in that way they are masters of their own universe." *Id.* at 638. Where the "train speed" was "well within the speed ratings promulgated by the FRA," the lower court did not abuse its discretion that Hesling's excessive speed claims were preempted.

Likewise, in this case, the Union Pacific train was operating a freight train on a Class 4 track, which, by federal regulation, limited the maximum operating speed to 60 miles per hour. Union Pacific has produced undisputed summary judgment evidence that its freight train was traveling 48-50 miles per hour. At that speed, Union Pacific's train was well under the designated speed limit.

The Taylor Entities argue, however, that Union Pacific cannot rely on preemption because it failed to maintain the tracks as required by federal regulations. The Taylor Entities rely on their expert, Alan Blackwell, a former employee of the Maintenance of Ways Department of the Missouri Pacific and Union Pacific Railroads who has experience inspecting railroads. Blackwell avers that a combination of conditions present at the Crossing did not provide for safe train operations and violated 49 C.F.R. § 213.1.

However, the Court finds that Blackwell's after-the-fact assessment does not create a genuine issue of material fact on the issue of speed. There is no evidence that Union Pacific violated a specific maintenance requirement set forth in 49 C.F.R. § 213.9, *et seq.* Moreover, only a federal track inspector has the authority to downgrade a track to a lower classification. 49 C.F.R. § 216.15(a); *see also Stevenson v. Union Pacific R.R.*, 110 F.Supp.2d 1086, 1092 (E.D. Ark. 2000) ("Federal law provides . . . that the decision to downgrade a track belongs to the FRA track

9

inspector."). While Blackwell contends that a federal track inspector *should have* recommended remediation, it is undisputed that the track was still rated Class 4 at the time of the accident, and federal track inspector *had not recommended* remediation or made the decision to downgrade the track. Therefore, there is no genuine issue of material fact for trial whether Union Pacific was in compliance with the applicable federal regulation on speed.

Further, to the extent that Union Pacific's Timetable or Company System Operating rule could constitute a "plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries,"[5] 49 U.S.C. § 20106(b)(1)(B), the undisputed evidence shows that the train was operating within the 60-mile-per-hour limit set by the Timetable and within the 50-mile-per-hour limit set for key trains under company policy. Therefore, there is no genuine issue of material fact for trial whether Union Pacific was in compliance with its own rules and standards.

Finally, the Court has considered two exceptions found in Supreme Court case law and the FRSA express preemption provision, but neither applies. In *Easterwood*, the Supreme Court declined to consider whether the FRSA preempts the state tort law "duty to slow or stop . . . to avoid a specific, individual hazard." 507 U.S. at 675 n.15.

> The term specific, individual hazard means a "discrete and truly local hazard." *Seyler v. Burlington N. Santa Fe Corp.*, 102 F.Supp.2d 1226, 1236 (D.Kan.2000) (citations omitted). It "relates to the avoidance of a specific collision." *Armstrong v. Atchison, Topeka & Santa Fe Ry. Co.*, 844 F.Supp. 1152, 1153 (N.D.Tex.1994). A condition that can be or is present at many, or most sites cannot be a specific, individual hazard. *See, e.g., Earwood v. Norfolk S. Ry. Co.*, 845 F.Supp. 880, 888 (N.D.Ga.1993); *see also Bowman v. Norfolk S. Ry. Co.*, 832 F.Supp. 1014 (D.S.C.1993). Most courts have rejected plaintiffs' claims of a specific, individual hazard, finding instead that the circumstances are preempted.

*Hesling*, 396 F.3d at 640.

---

[5] The Court need not and does not reach this issue for purposes of summary judgment.

In this case, the combination of conditions cited by the Taylor Entities could be present state-wide and did not render this particular collision imminent.[6] *See, e.g., Hughs v. Union Pac. R.R. Co.*, No. 5:15-06079-CV-RK, 2017 WL 1380480, at *3 (W.D. Mo. Apr. 14, 2017) (sight restrictions, excessive vertical elevation, and inadequate traffic control at the crossing did not render it "extrahazardous," so as to create a specific, individual hazard); *Furlough*, 766 So.2d at 760 (no specific, individual hazard where a crossing had an obstructed sight line, rough crossing, parallel roadways, inadequate warning devices, and inoperative ditch lights and accident occurred during inclement weather);*O'Bannon v. Union Pac. R.R. Co.*, 960 F.Supp. 1411, 1421 (W.D.Mo. 1997) (no specific, individual hazard where a dangerously designed crossing had inadequate warning devices, an obscured view due to the angle at which the track crossed the highway, and a steep grade); *see also Kankakee, Beaverville & S. R. Co. v. McLane Co.*, No. 4:08-CV-00048, 2010 WL 3672228, at *4 (N.D. Ind. Sept. 10, 2010) (agreeing "with the majority of courts that have considered the meaning of 'specific, individual hazard' and concluded that it refers to a unique occurrence that could cause an imminent collision."). The one condition that was specific to this collision, that did render it imminent, was the fact that Shackleford was stranded on the Crossing. *See Baker v. Canadian Nat'l/Illinois Cent. Ry. Co.*, 397 F. Supp. 2d 803, 813 (S.D. Miss. 2005) ("It has been consistently emphasized that the kinds of conditions that could constitute a 'specific individual hazard' are limited to transient conditions that could lead to an imminent collision, such as a child standing on the railway or a motorist stranded on a crossing or improperly parked tank cars which

---

[6]"A 'specific, individual hazard' cannot be a statewide problem. A 'specific, individual hazard' may entail any object that was not contemplated by the federal regulators who promulgated the Federal Railroad Safety Act and its regulations." *Furlough v. Union Pac. R.R. Co.*, 33,658 (La. App. 2 Cir. 8/31/00), 766 So. 2d 751, 760.

11

obstruct the view of the train engineer."); *see also Carter v. National Railroad Passenger Corp.*, 63 F. Supp. 3d 1118, 1155 (N.D. Cal. 2014) (quoting same). However, the undisputed evidence shows that the Union Pacific crew applied the emergency brakes as soon as they realized that the tractor trailer was stopped on the tracks. Thus, the *Easterwood* exception does not apply.

A second exception for a local safety or security hazard is also inapplicable.[7] *See* 49 U.S.C. § 20106(a)(2)(A); *Hesling*, 396 F.3d at 640; *Easterwood*, 507 U.S. at 675 n.15. The § 20106(a)(2) savings clause "allows states to adopt additional or more stringent state regulation[s] related to railroad safety to prevent a local hazard, but only if the state law is not incompatible with federal

---

[7]The Court would note that its review of the case law indicates that the two exceptions are sometimes conflated, but regardless of whether considered as a specific, individual hazard or as a local hazard, the Taylor Entities have failed to show that an exception is applicable. As the Southern District of Mississippi explained:

> While some courts have regarded the "essentially local safety hazard" exception in the savings clause of 49 U.S.C. § 20106 and the "specific individual hazard" exception recognized by the Court in *Easterwood* as synonymous and have used the terms interchangeably, *see, e.g., Gunn v. Atchison, Topeka and Santa Fe Ry. Co.*, 13 S.W.3d 52, 54 (Tex. Ct. App. 1999) (stating that "specific individual hazard" wording . . . was used by the *Easterwood* court as a substitute for the statutory "an excessively local safety hazard"), others have recognized these exceptions as distinct, *see, e.g., Stevenson v. Union Pacific R. Co.*, 110 F.Supp.2d 1086, 1088-1089 (E.D. Ark. 2000) ("A 'specific, individual hazard' is not to be confused with the statutory 'essentially local safety hazard' set forth in 49 U.S.C. § 20106."); *Hightower v. Kansas City Southern Ry. Co.*, 70 P.3d 835, 846-47 (Okla.2003) (noting distinction). In this court's view, the Supreme Court's reference to an exception for specific, individual hazards clarified that in addition to, or as a facet of a state's right to regulate as to essentially local safety hazards, federal regulations do not diminish the train crew's duty to exercise reasonable care to slow or stop the train to avoid an imminent collision.

*Baker*, 397 F. Supp. 2d at 814. This Court, however, attaches significance to the plain language of the statutory exception which requires action by the State in the form of a law or regulation, whereas, with regard to the *Easterwood* exception, it may be that the law on negligence imposes the only general duty required for application of the exception, assuming the other requirements are met.

regulation and does not burden interstate commerce." *Hesling*, 396 F.3d at 640 (citing 49 U.S.C. § 20106; *Easterwood*, 507 U.S. at 662). The savings clause is to be "narrowly construed." *Id.* (citing *Easterwood* v. CSX *Transp., Inc.*, 933 F.3d 1548, 1553 n.3 (11th Cir. 1991) (other citations omitted)). However, the Taylor Entities have failed to point to any state law, regulation, or order related to railroad safety or security which is applicable to their argument, but instead they rely only on the general law of negligence and comparative fault which do not appear to be encompassed by the exception. Further, the local-condition savings clause does not apply where a condition is statewide in character or is capable of being adequately addressed in the national standards created by the Secretary of Transportation.[8] In this case, the speed of the train has been addressed, and conditions pointed to, such as the elevation of the Crossing and the curve in the track, are conditions that appear across the state. *See United Transp. Union v. Foster*, 205 F.3d 851, 861 (5th Cir. 2000) ("We agree with the district court that the 'locality exception' applies only to local concerns, not state-wide hazards."). Therefore, no local safety or security hazard exception applies.

## III. CONCLUSION

For the foregoing reasons, Union Pacific's Motion for Partial Summary Judgment Regarding Speed [Doc. No. 191] is GRANTED. The Taylor Entities and any other opposing parties are

---

[8]The House Report on the Railroad Safety Act of 1970, states in pertinent part:

> The States will retain authority to regulate individual local problems or reduce essentially local railroad safety hazards. Since these local hazards would not be Statewide in character, there is no intent to permit a State to establish Statewide standards superimposed on national standards covering same subject matter.

H.R.REP. NO. 1194, 91st Cong., 2d Sess., reprinted in 1970 U.S.C.C.A.N. 4104, 4117.

13

precluded from presenting testimony or arguing to the jury in support of a claim or defense that Union Pacific was negligent based on the speed of the train at the time of the collision at issue.

MONROE, LOUISIANA, this 13st day of September, 2017.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE