# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## MONROE DIVISION

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY | CIVIL ACTION NO. 15-0074 |
| VERSUS | JUDGE ROBERT G. JAMES |
| TAYLOR TRUCK LINE, INC., ET AL. | MAG. JUDGE KAREN L. HAYES |

--(consolidated with)--

| | |
|---|---|
| R & L BUILDERS SUPPLY, INC., ET AL. | CIVIL ACTION NO. 15-2460 |
| VERSUS | JUDGE ROBERT G. JAMES |
| UNION PACIFIC RAILROAD COMPANY, ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 192] filed by Defendants Daniel Shackleford ("Shackleford"), College City Leasing, LLC ("College City"), Taylor Truck Lines, Inc. ("Taylor Truck"), Taylor Logistics, Inc. ("Taylor Logistics"), and Taylor Consolidated, Inc. (collectively, "the Taylor Entities"). Plaintiff Union Pacific Railroad Co. ("Union Pacific") opposes the motion. [Doc. No. 231]. The Taylor Entities filed a reply. [Doc. No. 244].

For the following reasons, the Motion for Summary Judgment is DENIED.

## I.     FACTS AND PROCEDURAL HISTORY

On October 5, 2014, Shackleford was operating a 2013 Kenworth tractor with trailer and dolly (hereinafter "tractor-trailer") loaded with a Freuhoff Terex RT-780 crane. He was en route to deliver the crane to a construction company in Mississippi. The tractor-trailer driven by Shackleford

was owned by College City, but leased to Taylor Truck. Taylor Logistics was the shipment broker.

At approximately 1:00 p.m., Shackleford was driving the tractor-trailer south on U.S. Highway 165 in Mer Rouge, Louisiana. At the intersection of 165 and U.S. Highway 425/La. Highway 2, Shackleford stopped at the stop sign and then turned left onto U.S. Highway 425/La. Highway 2, also known as Davenport Avenue. He then proceeded to the Highway 2/Davenport Avenue highway/railway grade crossing ("the Crossing") over a Union Pacific main line railroad track (identified as DOT crossing number 441-531N at railroad milepost 473.60). The elevated Crossing has pavement markings, crossbuck signs, flashing lights, gates, and bells.

As Shackleford attempted to drive over the Crossing, the trailer became lodged, straddling the tracks. He exited the tractor to attempt to extricate the trailer, but did not notify law enforcement or Union Pacific.

Before Shackleford could extricate the tractor-trailer, a Union Pacific train traveling north on the track began to approach the Crossing. Union Pacific engineer, Russell Rowe, was operating the lead locomotive, and Union Pacific conductor, James Kovalyshyn, was in the cab as well. The flashing lights, bell, and crossing gate were activated. When they realized that the tractor-trailer was stopped, crew members applied the emergency brakes in an effort to avoid the collision. The crew members were unsuccessful, and the train collided with the trailer and attached crane. As a result of the accident, approximately 17 or 18 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property, including land owned by R & L Properties of Oak Grove, LLC ("Properties").

On January 14, 2015, Union Pacific brought the instant suit against the Taylor Entities seeking to recover the property damage caused by the accident and derailment.

Properties and R & L Builders Supply, Inc. ("Builders Supply") had filed a separate lawsuit

against the Taylor Entities, Union Pacific, and Union Pacific's contractors, Prewett Enterprises, Inc.,

and Hulcher Services, Inc., seeking to recover their damages.

On November 4, 2015, the two lawsuits were consolidated.

Union Pacific asserts as one of its claims that Shackleford was negligent in failing to comply

with La. Rev. Stat. § 32:174, by attempting to traverse the Crossing without first notifying Union

Pacific. After discovery was complete, the Taylor Entities filed the instant motion, arguing that

federal preemption bars Union Pacific's claim based on La. Rev. Stat. § 32:174. The motion is fully

briefed [Doc. Nos. 231 & 244], and the Court is now prepared to rule.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment,

identifying each claim or defense--or the part of each claim or defense--on which summary judgment

is sought. The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." The

moving party bears the initial burden of informing the court of the basis for its motion by identifying

portions of the record which highlight the absence of genuine issues of material fact. *Topalian v.*

*Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting

that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of

materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would

affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that

a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

**B.      Preemption and La. Rev. Stat. § 32:174**

Assuming that Union Pacific could establish that Shackelford was operating equipment that fell within the purview of La. Rev. Stat. §32:174 and that he violated the statute,[1] the Taylor Entities argue that the statute is expressly preempted by the Federal Railroad Safety Act ("FRSA") based on regulations issued by the Federal Motor Carrier Safety Administration ("FMCSA.").

Union Pacific responds that the FMCSA's regulation of commercial truck drivers does not "boot strap" onto the FRSA to preempt state motor carriers laws governing motorists' duties at railroad grade crossings. [Doc. No. 231, p. 1].

In reply, the Taylor Entities argue that the Secretary of Transportation's statutory authority is not limited to the delegation of rulemaking to the Federal Railway Administration ("FRA"), but that the Secretary has the authority "to prescribe regulations and orders <u>for every area of railroad safety</u>." [Doc. No. 244, p. 2 (citing 42 U.S.C. § 20106)].

Louisiana Revised Statute § 32:174 provides:

A.      No person shall operate or move any crawler-type tractor, steam shovel, derrick, roller, or any equipment or structure having a normal operating speed of ten or less miles per hour or a vertical body or load clearance of less than one-half inch per foot of the distance between any two adjacent axles or in any event of less than nine inches, measured above the level surface of a roadway, upon or across any tracks at a railroad grade crossing without first complying with this Section.

B.      Notice of any such intended crossing shall be given to a station agent of such railroad and a reasonable time be given to such railroad to provide proper protection at such crossing.

---

[1] The Taylor Entities deny that Union Pacific can prove that La. Rev. Stat. § 32:174 applies and was violated.  However, the Taylor Entities' argument in the Motion for Summary Judgment is limited to preemption. Therefore, the Court expresses no opinion on the other issues.

C.     Before making any such crossing the person operating or moving any such vehicle or equipment shall first stop the same not less than fifteen feet nor more than fifty feet from the nearest rail of such railroad and while so stopped shall listen and look in both directions, and shall not proceed until the crossing can be made safely.

D.     No such crossing shall be made when warning is given by automatic signal or crossing gates or a flagman or otherwise of the immediate approach of a railroad train or car.  If a flagman is provided by the railroad, movement over the crossing shall be under his direction.

Union Pacific contends that Shackleford was operating equipment with a load clearance of less than nine inches, and, thus, failed in his duty to contact the railroad prior to attempting to traverse the Crossing.

However, this statute cannot apply if it is preempted by federal law.  The Supremacy Clause to the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const., ART. VI, CL.2.  Congress has the power under the Supremacy Clause to preempt state law.  Preemption may be express or implied.[2]  *See Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

The FRSA was enacted to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101.  The FRSA contains an express preemption provision:

(a)     National uniformity of regulation.--(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and

---

[2] In the area of implied preemption, the Supreme Court has recognized "field preemption where state law intrudes in an area that Congress has reserved for federal jurisdiction," and "conflict preemption, where enforcement of state law cannot be accomplished while simultaneously complying with federal law."  *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001) (citing *English v. General Electric Co.*, 496 U.S. 72 (1990)).  Only express preemption is at issue in this motion, as discussed *infra*.

orders related to railroad security shall be nationally uniform
to the extent practicable.

(2) A State may adopt or continue in force a law, regulation, or order
related to railroad safety or security until the Secretary of
Transportation (with respect to railroad safety matters), or the
Secretary of Homeland Security (with respect to railroad security
matters), prescribes a regulation or issues an order covering the
subject matter of the State requirement. A State may adopt or
continue in force an additional or more stringent law, regulation, or
order related to railroad safety or security when the law, regulation,
or order–

> (A)     is necessary to eliminate or reduce an essentially local
> safety or security hazard;
>
> (B)     is not incompatible with a law, regulation, or order of
> the United States Government; and
>
> (C)     does not unreasonably burden interstate commerce.

. . . .

49 U.S.C. § 20106.

Despite the express preemption provision, the United States Court of Appeals for the Fifth

Circuit has found that "FRSA preemption is even more disfavored than preemption generally."[3]

*United Transp. Union v. Foster,* 205 F.3d 851, 860 (5th Cir. 2000) (citing *Rushing v. Kansas City*

*S. Ry. Co.*, 185 F.3d 496, 515 (5th Cir. 1999)).

The restrictive terms of its preemption provision "indicate[ ] that pre-emption will
lie only if the federal regulations *substantially subsume* the subject matter of the
relevant state law." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct.
1732, 123 L.Ed.2d 387 (1993) (emphasis added). When applying FRSA preemption,
the Court eschews broad categories such as "railroad safety," focusing instead on the
**specific subject matter contained in the federal regulation**. *See id.* at 665-75, 113

---

[3]The current FRSA preemption provision is the result of Congress' enactment of the
Implementing Regulations of the 9/11 Commission Act of 2007, Pub. L. 110-53, 121 Stat. 266.
The 2007 amendment was a clarification, not a substantive amendment, so pre-2007 case law
remains valid. *See Zimmerman v. Norfolk So. Corp.*, 706 F.3d 177 (3d Cir. 2013).

> S.Ct. 1732. In sum, when deciding whether the FRSA preempts state laws designed to improve railroad safety, we interpret the relevant federal regulations narrowly to ensure that the careful balance that Congress has struck between state and federal regulatory authority is not improperly disrupted in favor of the federal government.

*Id.* (emphasis added).

The FRSA directs that the Secretary of Transportation is to "prescribe regulations and issue orders for every area of railroad safety . . . ." 49 U.S.C. § 20103. The Secretary of Transportation has delegated its regulatory power to the Federal Railroad Administration ("FRA"). *See Abate v. Southern Pac. Transp. Co.*, 928 F.2d 167, at 169, n. 2 (5th Cir. 1991) ("The FRA shall "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety. . . . The FRSA grants this authority to the Secretary of Transportation, who in turn has delegated the authority to the FRA."); *Missouri Pacific R.R. v. Railroad Comm'n of Tex.,* 850 F.2d 264, 266 (5th Cir. 1988) ("The . . . FRA . . . enforces the FRSA and promulgates railroad safety regulations.")*; see also Port of Shreveport-Bossier v. Fed. R.R. Admin.,* No. 10-60324, 2011 WL 1228767, at *1 (5th Cir. Apr. 4, 2011) ("The . . . FRA . . . is statutorily charged by Congress to 'prescribe regulations and issue orders for every area of railroad safety.'").

As the Fifth Circuit has instructed, the Court must determine whether the Secretary of Transportation has issued regulations in a specific area of railroad safety which would subsume the subject matter and thus preempt La. Rev. Stat. § 32:174. In this case, the FRA has not issued any applicable regulations. Instead, the Taylor Entities point to a regulation issued by the FMCSA, arguing that the cited regulation is related to railroad safety and triggers the FRSA's express preemption of La. Rev. Stat. § 32:174.

Under the Motor Carrier Safety Improvement Act of 1999, Congress transferred to the

FMCSA all "duties and powers related to motor carriers or motor carrier safety vested in the Secretary [of Transportation] by chapters . .. 133 through 149 . . . ." 49 U.S.C. § 113(f)(1). As with the FRA with regard to railway safety, the Secretary of Transportation has largely delegated authority to the FMCSA to make regulations pertaining to motor carriers or motor carriers' safety. Among those regulations, the FMCSA issued 49 C.F.R. § 391.11, which addresses a commercial driver's duty when approaching a railroad crossing:

> Every commercial motor vehicle other than those listed in § 392.10[4] shall, upon approaching a railroad grade crossing, be driven at a rate of speed which will permit said commercial motor vehicle to be stopped before reaching the nearest rail of such crossing and shall not be driven upon or over such crossing until due caution has been taken to ascertain that the course is clear.

49 C.F.R. § 392.11. Section 392.11 was issued pursuant to the authority of 49 U.S.C. §§ 504, 13902, 31136, 31151, and 31502, which are, respectively, the federal statutes pertaining to transportation reports and records (§504), registration of motor carriers (§13902), commercial motor vehicle safety (§ 31136),[5] the inspection, repair, and maintenance of intermodal equipment (§ 31151),[6] and the requirements for qualifications, hours of service, safety, and equipment standards applicable to motor carriers (§31502). This regulation, therefore, was not issued by the Secretary of Transportation with regard to railroad safety, but motor carrier safety. The Secretary of Transportation did not issue a regulation, through any agency, pertaining to railroad safety which preempts the state statute in

---

[4]The Taylor Entities deny that § 392.10 applies.

[5]This statute is the codification of the Federal Motor Carrier Safety Act of 1984.

[6]"The term 'intermodal equipment' means trailing equipment that is used in the intermodal transportation of containers over public highways in interstate commerce, including trailers and chassis." 49 U.S.C. § 31151(f)(1).

question.[7]

## III.   CONCLUSION

For the foregoing reasons, the Taylor Entities' Motion for Summary Judgment [Doc. No.
192] is DENIED.

MONROE, LOUISIANA, this 20th day of September, 2017.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[7]The case relied upon by the Taylor Entities, *CSX Transp., Inc. v. City of Plymouth,
Mich.*, 86 F.3d 626 (6th Cir. 1996), is inapposite.  In that case, CSX sought injunctive and
declaratory relief from a municipal ordinance prohibiting the railroad from causing more than a
five-minute obstruction of street traffic.  Under the FRSA's express preemption provision, only
state laws, not municipal ordinances, are excepted if they meet the requirements set forth in 49
U.S.C. § 20106.