# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **UNION PACIFIC RAILROAD COMPANY** | **CIVIL ACTION NO. 15-0074** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **TAYLOR TRUCK LINE, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

--(consolidated with)--

| | |
|---|---|
| **R & L BUILDERS SUPPLY, INC., ET AL.** | **CIVIL ACTION NO. 15-2460** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **UNION PACIFIC RAILROAD COMPANY, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

Pending before the Court is a Motion for Summary Judgment on Damages [Doc. No. 422] filed by Union Pacific Railroad Co. ("Union Pacific"). For the following reasons, the Motion for Summary Judgment on Damages is DENIED.

**I.   FACTS AND PROCEDURAL HISTORY**

On October 5, 2014, Daniel Shackleford ("Shackleford") was operating a 2013 Kenworth tractor with trailer and dolly (hereinafter "tractor-trailer") loaded with a Freuhoff Terex RT-780 crane. Shackleford had picked up the crane in Iowa and was en route to deliver it to a construction company in Mississippi. The tractor-trailer driven by Shackleford was owned by College City Leasing, LLC ("College City"), but leased to Taylor Truck Lines, Inc. ("Taylor Truck"). Taylor Logistics, Inc. ("Taylor Logistics") was the shipment broker.[1]

---

[1]Union Pacific also brought suit against Taylor Consolidated, Inc. Hereinafter the Court

The trailer's clearance could be adjusted. It had five "teeth" and was set at the second tooth setting prior to loading. However, Shackleford decided to leave the trailer at the same setting after the crane was loaded.

Because the load was oversized, Shackleford was traveling through Louisiana with a Louisiana Department of Transportation ("LDOT") Overweight Permit. However, he did not have an escort vehicle, as required by the permit.

At approximately 1:00 p.m., Shackleford was driving the tractor-trailer south on U.S. Highway 165 in Mer Rouge, Louisiana. At the time he was talking on his cell phone with another driver, Frank Murphy ("Murphy"), using the hands-free mode.

At the intersection of 165 and U.S. Highway 425/La. Highway 2, Shackleford stopped at the stop sign and then turned left onto U.S. Highway 425/La. Highway 2, also known as Davenport Avenue. He then proceeded to the Highway 2/Davenport Avenue highway/railway grade crossing ("the Crossing") over a Union Pacific main line railroad track (identified as DOT crossing number 441-531N at railroad milepost 473.60). There are pavement markings, crossbuck signs, flashing lights, gates, and bells at the Crossing. This was the first time Shackleford had traversed this Crossing, which is somewhat elevated and humped. Shackleford had not contacted Union Pacific to notify it of his intent to traverse the Crossing.

Shackleford did not adjust the ground clearance on the trailer prior to attempting to traverse the Crossing. The trailer became lodged and was "high centered," straddling the tracks. Shackleford told Murphy what had happened, but remained on the call with him while he engaged

---

will refer to these parties collectively as the Taylor Entities.

the parking brake, put the tractor in neutral, and exited. Shackleford then attempted to dislodge the trailer by raising the trailer up one "tooth," and then going backwards and forwards. The trailer was still stuck, so he exited again, and raised the trailer another tooth. During the time he was attempting to dislodge the trailer, Shackleford did not notify law enforcement or Union Pacific.[2]

Approximately two minutes after the trailer became lodged on the tracks[3] and before he could try again to dislodge it, a Union Pacific train traveling north on the track, which runs parallel to U.S. Highway 165/La. Highway 138, began to approach the Crossing. The train activated its flashing lights, bells, and crossing gate. When he saw the approaching train, Shackleford exited the truck and ran.

At the time of the accident, Union Pacific engineer, Russell Rowe, was operating the lead locomotive, and Union Pacific conductor, James Kovalyshyn, was in the cab as well. Once they saw the tractor-trailer at the Crossing, crew members applied the emergency brakes in an effort to avoid the collision. The crew members were unsuccessful, and the train collided with the trailer and attached crane. As a result of the collision, approximately 17 railroad cars and 2 locomotives left the railroad tracks, cargo spilled, and a tank car leaked Argon onto surrounding property, including land owned by R & L Properties of Oak Grove, LLC.

Following the collision, the tractor-trailer was too damaged to measure the exact ground

---

[2]Murphy recalls telling Shackleford to call 911. [Doc. No. 209, Exh. I, Murphy Depo., p. 53]. Shackleford does not deny Murphy's testimony, but does not recall what Murphy told him. [Doc. No. 209, Exh. A, Shackleford Depo., p. 168].

[3]Shackleford estimated the elapsed time as approximately two minutes. The Mer Rouge Police Chief, Charles Mitchell Stephens, testified that a review of video surveillance from a nearby business showed that Shackleford was stuck on the tracks for one to one and one-half minutes before the collision. [Doc. No. 234, Exh. 4, Deposition of Mitch Stephens, pp. 14-15].

clearance of trailer. Prior to this incident, vehicles had been "stuck" or "hung up" on the track on three occasions: March 18, 2011; October 25, 2011; and May 15, 2014.

On January 14, 2015, Plaintiff Union Pacific brought the instant suit against the Taylor Entities seeking to recover the property damage caused by the accident and derailment.

R & L Properties of Oak Grove, LLC ("Properties") and R & L Builders Supply, Inc. ("Builders Supply") had filed a separate lawsuit against the Taylor Entities, Union Pacific, and Union Pacific's contractors, Prewett Enterprises, Inc., and Hulcher Services, Inc., seeking to recover their damages. On November 4, 2015, the Properties and Builders Supply lawsuit was consolidated with the Union Pacific lawsuit.

Numerous motions have been filed and ruled upon on this case. With regard to the claims by Union Pacific against the Taylor Entities,[4] the Court has ruled that the Taylor Entities' defense of comparative negligence is preempted by the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. §10101, *et. seq.*[5] Therefore, on July 13, 2018, Union Pacific filed a Motion for Leave to File Motion for Partial Summary Judgment on Damages. That motion was granted on July 16, 2018, and the instant motion [Doc. No. 422] was filed in the record. The Taylor Entities filed an opposition memorandum. [Doc. No. 425]. Union Pacific filed a reply memorandum [Doc. No. 430].

---

[4]There are some remaining claims by Properties against the third party contractors, but those claims are not relevant to the resolution of this motion.

[5]The Court granted the Taylor Entities' authorization to seek an interlocutory appeal of its ruling. [Doc. No. 411]. However, the United States Court of Appeals for the Fifth Circuit denied leave to proceed with that interlocutory appeal. [Doc. No. 413]. The Taylor Entities filed yet another motion yesterday, this time seeking reference of the ICCTA issue to the Surface Transportation Board and to stay proceedings until its Ruling. [Doc. No. 426]. That motion will be considered in due course.

The instant motion is now ripe.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record, including depositions, documents, and affidavits, which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

### B. Damages

Union Pacific moves the Court for summary judgment against the Taylor Entities for damages in the amount of $5,693,575.78. Specifically, Union Pacific contends that it is entitled to recover the following items of damages from the Taylor Entities:

(1) The total loss of the Norfolk Southern ("NS") locomotive 9939, requiring Union Pacific to pay NS $1,555,007.57 in reimbursement and $75,356,20 in rental for the

period from the accident date to the resolution of NS damage claim on November 21, 2014.

(2) The costs of repairs to and loss of use of Union Pacific locomotive 6387 in the total amount of $370,793.20.

(3) Recovery of payments for cargo losses and unpaid freight charges to shippers in the amount of $943,809.03.

(4) The labor and materials for the track repair in the amount of $241,961.65.

(5) Reimbursement for the value of seventeen railcars for which Union Pacific had to pay the rail car owners less salvage in the total amount of $1,422,249.35.

(6) Reimbursement for the work performed by Hulcher Services and Prewett Enterprises (B&P) in the total amount of $709,886.06.

(7) Reimbursement for payments made to environmental contractors in the total amount of $356,451.19.

(8) Reimbursement for wages paid to trains crews assigned to trains which were delayed by the fact that the subject rail line was out of service, in the total amount of $18,081.53.

In support of their motion and in its reply memorandum, Union Pacific has cited the Court to deposition testimony, an affidavit, and documentary evidence.

In response, the Taylor Entities counter that the Motion for Partial Summary Judgment on Damage "is akin to a Plaintiff in a personal injury lawsuit, seeking summary judgment on all alleged damages through introduction of only the plaintiff's discovery deposition." [Doc. No. 425, p. 1]. The Taylor Entities point out that there are discrepancies in the deposition testimony

which "contradict" the damages claim or "reveals that the deponent cannot attest to the total amount claimed." *Id.* They then point to specific problems with the evidence relied upon by Union Pacific. If the Court is inclined to grant any portion of the amounts prayed for by Union Pacific, the Taylor Entities move, pursuant to Federal Rule of Civil Procedure 56(d), for leave to conduct additional discovery.

In response, Union Pacific cites the Court to additional evidence which, along with its original filings, it contends are sufficient to render judgment in its favor. Union Pacific argues that the Taylor Entities have failed to produce testimony, documents, or affidavits to counter its evidence, and its motion should be granted.

The plaintiff bears the burden of proving by a preponderance of the evidence the damage he suffered as a result of the defendant's fault. *Wainwright v. Fontenot*, 774 So.2d 70, 74 (La. 2000). "The assessment of 'quantum,' or the appropriate amount of damages . . . is a determination of fact." *Id.*

While Union Pacific has addressed several issues pointed out by the Taylor Entities, there remain genuine issues of material fact for trial. The Court is well aware of the standard for summary judgment, but that standard does not require the Taylor Entities to produce its own witnesses. Rather, it requires the Taylor Entities to point to facts in the record which preclude summary judgment. This is a hotly contested case which has been on the Court's docket since 2015, and the parties have had the opportunity to address every nuance of the case. At this point, the Court's rulings have rendered summary judgment to Union Pacific on liability, but the issue of damages is reserved to the trier of fact unless there are no genuine issues. Union Pacific has certainly presented admissible evidence that it is entitled to damages in some amount, but the Court

finds that the Taylor Entities have pointed to flaws with the evidence, and that they have the right to challenge that evidence at trial in January with vigorous cross-examination of Union Pacific's witnesses. Therefore, the Court will not grant summary judgment on this issue.

## III. CONCLUSION

For the foregoing reasons, Union Pacific's Motion for Summary Judgment on Damages [Doc. No. 429] is DENIED.

MONROE, LOUISIANA, this 17th day of August, 2018.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE